Albert Trepanier, et al. v. Getting Organized, Inc. and Tommy Styles

[583 A.2d 583]

No. 88-165

Present: Dooley, J. and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed October 12, 1990

*Francis X. Murray, John T. Leddy* and *William F. Ellis* of *McNeil, Murray & Sorrell, Inc.*, Burlington, for Plaintiffs-Appellants.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendants-Appellees.

**Dooley, J.** Plaintiffs, former employees or representatives of former employees of Nordic Ford, Inc., appeal a superior court order dismissing their suit against defendants Getting Organized, Inc. (GO, Inc.) and Tommy Styles, an "efficiency firm" and its agent, who were hired by Nordic to improve flagging motor vehicle sales and who advised Nordic to fire plaintiffs. In dismissing the complaint and granting summary judgment in favor of defendants, the court ruled that the doctrine of collateral estoppel precluded plaintiffs from relitigating any of the counts brought in their complaint, since the gravamen of the complaint is age discrimination and a federal district court jury had already determined that Nordic did not fire plaintiffs because of their age. We affirm in part and remand for further proceedings consistent with this opinion.

The facts of this case are related in some detail in a 1986 companion case, *Payne v. Rozendaal*, 147 Vt. 488, 520 A.2d 586 (1986). Plaintiffs filed suit against Nordic and defendants in 1982, claiming that they were fired because defendants had advised Nordic to shed its "retirement home image" and replace the current employees with "young go-getters." The complaint alleges that Nordic violated both federal and state law when it fired plaintiffs without just cause based solely on their age, and that defendants tortiously interfered with the contractual relationship between plaintiffs and Nordic. In addition, plaintiffs allege that the actions of Nordic and defendants constituted intentional infliction of emotional distress and resulted in the wrongful death of one of the former employees and his widow's loss of consortium.

Plaintiffs first brought suit in United States District Court for the District of Vermont pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, joining in the complaint their state law claims. Citing the greater scope of potential remedies for some of the state claims and the additional matters of proof for others, the federal district court dis-

missed the pendent state claims without prejudice in October of 1982. Eventually, the case went to trial on the ADEA claim against Nordic only, and a jury returned a verdict for defendant in July, 1984. Plaintiffs appealed the judgment but entered into a stipulated settlement of dismissal while the appeal was pending.

Meanwhile, in October of 1982, plaintiffs brought their state claims before the superior court. In response to a motion for summary judgment by Nordic and defendants, the court dismissed all of plaintiffs' claims except for the claim of tortious interference with contractual relations against defendants. The court ruled that no state law in existence at the time of the discharge restricted Nordic's right to fire plaintiffs on the basis of their age, and that only the tortious interference claim could be sustained in the absence of a viable claim for wrongful discharge. In 1986, this Court reversed the superior court's dismissal of plaintiffs' other claims and remanded the case for further proceedings, holding that at the time of the discharge plaintiffs had a viable common-law cause of action for wrongful discharge. *Payne v. Rozendaal*, 147 Vt. at 495, 520 A.2d at 590. The Court affirmed the superior court's refusal to dismiss the tortious interference claim against defendants. *Id.* at 496, 520 A.2d at 591.

Upon remand, defendants filed a motion to dismiss and/or for summary judgment, arguing that the federal jury verdict collaterally estopped plaintiffs from further litigating any of their state claims because age discrimination is an essential element of all of the claims. They also argued that plaintiffs had presented no evidence of improper interference with contractual relations. In January, 1988, the superior court dismissed the case, ruling that the gravamen of the complaint was age discrimination, that plaintiffs had had a full and fair opportunity to litigate that issue in the federal court, and that the federal court judgment estopped them from relitigating their claims, all of which sought damages as a result of the alleged age discrimination.

On appeal, plaintiffs argue that the court erred in ruling that they were collaterally estopped from relitigating the issue of age discrimination. They also claim that the court erred in dismissing their claim of tortious interference with contractual re-

lations, as well as their emotional distress, wrongful death, and loss of consortium claims.

## I.

 Plaintiffs argue that collateral estoppel should not apply in the instant case because: (1) defendants were not parties to the federal litigation; (2) the precise issues involved here were not determined in the federal action; (3) they did not have a full and fair opportunity to litigate their claims against defendants; and (4) defendants' invocation of the doctrine was untimely. The first part of the argument is a plea for retention of the doctrine of mutuality.[1] Under this doctrine, neither party can use a prior judgment against the other unless both parties are bound by the judgment. See, e.g., *Dunnett v. Shields*, 97 Vt. 419, 431, 123 A. 626, 632 (1924). In effect, the doctrine provides parties who litigated and lost an opportunity to relitigate identical issues against new parties in another action.

After years of creating various exceptions to the rule, some artificial, most courts have abandoned the mutuality requirement because it fails to distinguish between those parties who have never litigated an issue and those who have litigated and lost. See Annotation, *Mutuality of Estoppel as Prerequisite of Availability of Doctrine of Collateral Estoppel to a Stranger to the Judgment*, 31 A.L.R.3d 1044 § 2 (1970 & Supp. 1990). Indeed, "[n]onmutual issue preclusion is now permitted in federal courts, in most state courts, and in the overwhelming majority of state decisions that have recently reconsidered the question." 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4463, at 560 (1981). In the leading case, Justice Traynor cogently stated the rationale behind the abandonment of mutuality: "[I]t would be unjust to permit one who has had

---

[1] We reject defendants' argument that federal law on issue preclusion controls here. While some courts and commentators prefer a simple rule declaring that questions of res judicata must be resolved according to the law of the court that rendered the judgment or decided the issue, see, e.g., Degnan, *Federalized Res Judicata*, 85 Yale L.J. 741 (1976), there is no reason to apply such a rule when the original court allows preclusion without mutuality, particularly when the original court is a federal court and there is no federal question involved in the subsequent state court proceeding. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4465, at 616–17 and § 4468, at 657–58 (1981).

his day in court to reopen identical issues by merely switching adversaries." *Bernhard v. Bank of America*, 19 Cal. 2d 807, 813, 122 P.2d 892, 895 (1942). Moreover, issue preclusion without requiring mutuality protects the court system and potential litigants from the burdens of relitigation, encourages litigants to join all parties in one action, and decreases the chances of inconsistent adjudication.

 The abandonment of the mutuality requirement does not mean that issue preclusion without mutuality follows as a matter of course. Rather, preclusion should be found only when the following criteria are met: (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair. See *Bernhard*, 19 Cal. 2d at 813, 122 P.2d at 895; *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328 (1971). No one simple test is decisive in determining whether either of the final two criteria are present; courts must look to the circumstances of each case. Among the appropriate factors for courts to consider are the type of issue preclusion,[2] the choice of forum, the incentive to litigate, the foreseeability of future litigation, the legal standards and burdens employed in each action, the procedural opportunities available in each forum, and the existence of inconsistent determinations of the same issue in separate prior cases. See *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331–32 (1979); *Blonder-Tongue*, 402 U.S. at 333–34; Restatement (Second) of Judgments §§ 28–29 (1982). In short, in order to satisfy

---

[2] There is defensive use of collateral estoppel, as in the instant case, where a plaintiff is estopped from asserting a claim that he or she had previously litigated and lost on the same issue against another defendant, see, e.g., *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971), and offensive use of collateral estoppel, where a new plaintiff seeks to estop a defendant from relitigating an identical issue that the defendant previously litigated and lost against another plaintiff. See, e.g., *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979). The use of offensive collateral estoppel is more controversial than the use of defensive collateral estoppel, and generally requires additional considerations. See *Parklane*, 439 U.S. at 329–31.

the final two criteria, the party opposing collateral estoppel must show the existence of circumstances that make it appropriate for an issue to be relitigated. See *Carter-Wallace, Inc. v. United States*, 496 F.2d 535, 539 (Ct. Cl. 1974).

██ We now join those courts that have abandoned an uncritical acceptance of the doctrine of mutuality. We refuse to ground the applicability of collateral estoppel on a mechanical use of the mutuality requirement. Rather, the critical inquiry is whether the party to be bound has had a full and fair opportunity to contest an issue resolved in an earlier action so that it is fair and just to refuse to allow that party to relitigate the same issue. The absence of mutuality will not preclude the use of collateral estoppel unless the party denying the estoppel shows special circumstances indicating unfairness. Cf. *In re Estate of Leno*, 139 Vt. 554, 558, 433 A.2d 260, 263 (1981) (Court implicitly accepted nonmutual issue preclusion).

█ Plaintiffs argue second that the issue decided by the federal jury was not the same issue involved in this case. Specifically, plaintiffs contend that the federal jury decided only that age discrimination was not a "determining factor" in their discharge; therefore, they are not collaterally estopped from claiming that age played "some role" in defendants' advice that they be discharged. We find no merit in this argument. The gist of the complaint is that defendants advised Nordic to fire plaintiffs because of their ages, and that Nordic followed defendants' advice. In the federal case, the judge instructed the jury that in order to prevail, a plaintiff "must prove that his age was a 'determining factor' in the discharge, in the sense that, *but for* the employer's motive to discriminate against him because of age, he would not have been discharged." (Emphasis in original.) If Nordic did not fire plaintiffs because of their age, defendants' alleged discriminatory advice to Nordic could not have constituted age discrimination resulting in wrongful discharge, and, consequently, cannot trigger the common-law remedy for "discharge of an employee solely on the basis of age" created by *Payne v. Rozendaal*, 147 Vt. at 494, 520 A.2d at 589.[3]

---

[3] Therefore, neither can plaintiffs argue that because defendants' conduct

■ Plaintiffs also allege that collateral estoppel does not apply because they did not have a full and fair opportunity to litigate their claims against defendants in the federal action. On this point, plaintiffs have confused issue preclusion with claim preclusion. It is irrelevant to our analysis here whether plaintiffs were precluded from litigating their state claims in federal court. The pertinent question is whether plaintiffs had a full and fair opportunity to litigate an issue necessarily decided by the federal court, and whether it is fair to prevent plaintiffs from relitigating that issue here. We cannot find, and plaintiffs have not shown, any reason why their federal court opportunity was not full and fair. Accordingly, we reject this argument.

■ Finally, plaintiffs contend that defendants' motion for summary judgment based on collateral estoppel was untimely. The motion was filed after the remand from this Court and after the verdict in the federal court. We cannot see how defendants could have raised the defense any earlier. For the above reasons, we conclude that plaintiffs' common-law age-discrimination claim is barred by the preclusive effect of the federal court judgment. Since there is no longer any "genuine issue as to any material fact" on the age discrimination claim, the trial court properly granted summary judgment for defendants on this claim.

## II.

Next, plaintiffs argue that even if the trial court was correct in precluding relitigation of the age discrimination issue, its dismissal of their claim of tortious interference with contractual relations was erroneous because age discrimination is not necessarily an element of that claim. We agree that the tortious interference claim was not necessarily derivative of the age discrimination claim.

---

constituted age discrimination, defendants improperly interfered with the contractual relationship between plaintiffs and Nordic, since the federal court verdict forecloses the possibility that such conduct "induced or otherwise caused" the interference with the contract, as required by *Williams v. Chittenden Trust Co.*, 145 Vt. 76, 81–82, 484 A.2d 911, 914 (1984).

▮▮▮▮▮ In order "to be liable for interference with a contractual relationship, the defendant must have intentionally and improperly induced or caused [a person] not to perform under its contract with the plaintiff." *Williams v. Chittenden Trust Co.*, 145 Vt. 76, 80, 484 A.2d 911, 913 (1984). This tort provides protection even to contracts terminable at will. *Mitchell v. Aldrich*, 122 Vt. 19, 23, 163 A.2d 833, 836 (1960). The intent element is satisfied even "if the actor does not act with the desire to interfere with the contract but knows that interference will be substantially certain to occur as a result of his or her action."[4] *Williams*, 145 Vt. at 81, 484 A.2d at 914. Nevertheless, the defendant might intentionally interfere with the plaintiff's interests without liability if there is an acceptable purpose behind the interference. Accordingly, interference with contractual relations is not "improper" if it results from "honest advice." *Id.* at 83, 484 A.2d at 915 (citing Restatement (Second) of Torts § 772(b) (1979)). Pursuant to this qualified privilege, "efficiency experts," among others, are protected in the performance of their services as long as their advice is requested, is given within the scope of the request, and is honest. Restatement (Second) of Torts § 772 comment c.

▮▮▮▮▮ If the above three conditions are met, "it is immaterial that the actor also profits by the advice or that he dislikes" the person whose contract was interfered with. See *id.*; *Riblet Tramway Co. v. Ericksen Assocs.*, 665 F. Supp. 81, 87–88 (D.N.H. 1987) (no genuine issue of fact as to whether advice of defendant engineering consultant was dishonest despite the

---

[4] Because it is clear from the record, and indeed defendants do not contest the fact, that defendants were aware that their advice, if followed, would lead to the termination of plaintiffs' at-will employment contracts, we need not determine here whether negligent interference with contractual relations is a viable cause of action in Vermont. We point out, however, that most courts agree that the basis of liability for tortious interference is intent, and that most of the cases where this rule appears not to be followed are actually situations where the economic loss caused by the "tortious interference" is an item of the damages that resulted from an independent tort, such as where negligent injury to a person results in lost wages. See W. Keeton, Prosser and Keeton on Torts § 129, at 982 and 997 (5th ed. 1984); *Green Mountain Power Corp. v. General Elec. Corp.*, 496 F. Supp. 169, 174–75 (D. Vt. 1980) (application of doctrine of negligent interference with contract is "wholly artificial" and best left to "more familiar tort terrain").

plaintiffs' claim that consultant was maliciously predisposed toward them). Thus, the defendant's qualified privilege remains intact even if the defendant's motives were mixed. See *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir. 1982) (business advisor of corporation retains privilege even assuming plaintiff's allegations of mixed motives were true); *Welch v. Bancorp Management Advisors, Inc.*, 296 Or. 208, 218, 675 P.2d 172, 178–79 (1983) (financial advisor privileged to interfere with contract as long as it acted within scope of employment and to further principal's interest, even if it profited by advice).[5] On the other hand, if the advisor acts in an improper manner solely for his own interests, he may be liable for tortious interference. *Welch*, 296 Or. at 218, 675 P.2d at 179.

■ ■ The consultant's advice is honest if it is made in good faith; no more is required. Restatement (Second) of Torts § 772 comment e. Because justification for interference with contractual relations is an affirmative defense, the intervenor "has the burden of proving his privilege to intervene." *Mitchell*, 122 Vt. at 24, 163 A.2d at 836; see also *Payne*, 147 Vt. at 496, 520 A.2d at 590 (same); Restatement (Second) of Torts § 767 comment k at 38 (whether special relation exists between advisor and advisee, thereby making it appropriate for latter to "advise freely," is a matter of justification for which the defendant retains the burden of proof). We need not decide at this point whether we will determine the presence of good faith on a subjective or objective standard, or a combination of both. It is sufficient to say that a contracting party who acts in complete

---

[5] We are aware that the two cases cited speak in terms of "agent" and "principal," while the relationship between Nordic and defendants in the instant case would most likely be characterized as "principal" and "independent contractor." Nevertheless, the rationale quoted below for the mixed-motive rule when a principal-agent relationship exists holds equally well for a principal-independent contractor relationship:

We believe that advice by an agent to a principal is rarely, if ever, motivated purely by a desire to benefit only the principal. An agent naturally hopes that by providing beneficial advice to his principal, the agent will benefit indirectly by gaining the further trust and confidence of his principal. If the protection of the privilege were denied every time that an advisor acted with such mixed motive, the privilege would be greatly diminished and the societal interests it was designed to promote would be frustrated.

*Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir. 1982).

disregard of the honest advice it is contractually obligated to give merely to further its own interests can be found to lack good faith. Cf. *Marley v Borough of Palmyra*, 193 N.J. Super. 271, 294, 473 A.2d 554, 566 (1983) ("Reckless action may deny good faith.").[6]

 Plaintiffs have made a number of claims, some of which do not involve age discrimination, to show that defendants have no valid justification for their actions. Plaintiffs have alleged that defendants lied about plaintiffs' job performance. Further, they have alleged that defendants' action in recommending termination of plaintiffs was motivated by defendants' desire to earn fees for the selection of replacement employees. Given the fact that plaintiffs have raised questions regarding defendants' actions and motives in advising Nordic to fire plaintiffs, and that defendants have the burden of showing justification for their actions, summary judgment is inappropriate here. See *Payne*, 147 Vt. at 496, 520 A.2d at 590 (the defendant's justification or privilege is question for resolution by the jury); see also *Messier v. Metropolitan Life Ins. Co.*, 154 Vt. 406, 409, 578 A.2d 98, 99–100 (1990) (in deciding whether genuine issue of material fact exists, all allegations made in opposition to summary judgment are regarded as true if supported by affidavits or evidence). Accordingly, we reverse the grant of summary judgment on the tortious interference claim and remand the matter for consideration of whether defendants improperly interfered with the at-will employment contracts of Nordic and plaintiffs.

## III.

 Finally, plaintiffs argue that because it was error for the trial court to dismiss their tortious interference claim, it was also error to dismiss their emotional distress, wrongful death, and loss of consortium claims, since they are derivative of the tortious interference claim. We agree that these claims are not necessarily derivative of the age discrimination claim and therefore should not have been summarily dismissed on

---

[6] Our citation of *Marley* should not be taken as an adoption of the subjective good-faith standard explicated in *Marley*. We do agree, however, with the court's conclusion that reckless conduct may establish a lack of good faith.

that basis. We point out, however, that the wrongful death and loss of consortium claims are derivative in nature and must fail absent an independent underlying tort. *Derosia v. Book Press, Inc.*, 148 Vt. 217, 220, 531 A.2d 905, 907 (1987) (loss of consortium is derivative action); *Whitchurch v. Perry*, 137 Vt. 464, 469, 408 A.2d 627, 630 (1979) (wrongful death is derivative action). Emotional distress damages may be available to one who is harmed by tortious interference with contractual relations, Restatement (Second) of Torts § 774A(1)(c), and their presence may also give rise to an independent cause of action. See, e.g., *Crump v. P & C Food Markets*, 154 Vt. 284, 296, 576 A.2d 441, 448 (1990).

*The order of the superior court granting defendants' motion is affirmed as to counts I and IV, and reversed as to counts II, III, V, and VI. The matter is remanded for further proceedings consistent with this opinion.*