Frank L. CHANDLER,
Plaintiff–Appellee,

v.

BOMBARDIER CAPITAL,
INC., Defendant,

Howard Mulcahey, Defendant–Appellant.

No. 1962, Docket 94–7073.

United States Court of Appeals,
Second Circuit.

Argued Aug. 11, 1994.

Decided Dec. 22, 1994.

Patricia M. Sabalis, Burlington, VT, Downs Rachlin & Martin, for defendant-appellant.

Joseph Paul O'Hara, Burlington, VT, Bloomberg, Oettinger & O'Hara, for plaintiff-appellee.

Before WINTER and LEVAL, Circuit Judges, and GAGLIARDI, District Judge.*

LEVAL, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the District of Vermont, after a jury trial conducted before James L. Oakes, *Circuit Judge,* sitting by designation. The jury found defendant Howard Mulcahey liable for tortious interference with contractual relations and awarded plaintiff Frank Chandler $161,277 in damages. In addition, the district court granted prejudgment interest to the plaintiff, calculated according to the federal statutory rate. On appeal, Mulcahey contends that Judge Oakes's jury charge on tortious interference with contractual relations was erroneous, and that the jury's verdict was not supported by the evidence.[1] He also asserts that the award of prejudgment interest was improper.

We affirm.

### Background

Bombardier Capital, Inc. ("Bombardier"), a Vermont corporation, provides inventory floor financing to boat and recreational vehicle dealers. In November 1988, Bombardier made Chandler its Director of Credit. At the time, Howard Mulcahey was Vice President of Sales and Marketing. Mulcahey did not have any supervisory authority over Chandler. Chandler reported directly to the president of the company, Jacques Gingras.

Bombardier's credit policy required dealers who obtained credit from it to forward to Bombardier the proceeds of boat sales immediately. On June 15, 1989, Mulcahey learned that a Bombardier customer was not complying with this policy. Family Boating Center ("Family Boating"), a Florida boat dealer, had sold more than $400,000 worth of inventory without remitting the proceeds. By selling inventory subject to Bombardier's security interest without paying Bombardier, Family Boating created, according to the terminology of the industry, a "sold-out-of-trust" situation ("SOT"). The $400,000 SOT was the largest ever encountered by Bombardier.

Soon after learning of this problem, Chandler called Family Boating to attempt to fashion a work-out arrangement. He promptly informed Mulcahey of the situation and asked if he would like to get involved in the work-out discussions. At trial, Chandler testified that Mulcahey declined, expressing "full confidence in [Chandler's] ability to negotiate the workout." Chandler also testified that he reported the problem to Bill Brady, the company's Vice President of Finance and Treasurer. Brady told Chandler that he should "handle it."

Shortly after he discussed the Family Boating SOT with Mulcahey, Chandler was fired by Bombardier's president, Gingras. Gingras testified that Mulcahey had told him about the SOT problem and had criticized Chandler's handling of the matter. Mulcahey told Gingras that Chandler knew about the Family Boating matter for nearly six weeks before he did anything about it; that Chandler tried to hide the SOT situation from management; and that Chandler admit-

---

* The Honorable Lee P. Gagliardi, United States Senior District Judge for the Southern District of New York, sitting by designation.

1. Mulcahey also contends that the jury improperly awarded front pay to Chandler.

ted fault regarding the handling of the matter. It was on the basis of Mulcahey's statements that Gingras decided to dismiss Chandler.

Taken in a light most favorable to Chandler, the evidence showed that Mulcahey's statements to Gingras were untrue. The evidence further showed that Chandler's performance had never been criticized prior to this incident. To the contrary, he received compliments from Bombardier's president on his work performance, was never given a reprimand or warning and, at the time of his discharge, was one of three candidates being considered for vice-president of operations. Mulcahey assumed control over the credit department after Chandler was fired.

### The Proceedings Below

Chandler brought suit against both Bombardier and Mulcahey, alleging, *inter alia,* breach of contract, negligence, and promissory estoppel against Bombardier, and tortious interference with business relations against Mulcahey. After a five-day trial, the jury found in favor of Bombardier on the claims asserted against it, but found in favor of Chandler on his claim against Mulcahey. Mulcahey moved for judgment as a matter of law or for a new trial, asserting that he could not be held liable because he acted in the scope of his employment as a corporate officer.

The district court denied Mulcahey's motion. The court concluded that under Vermont law, a corporate officer can be held liable for tortious interference with the contracts of his employer if he "wrongfully and intentionally interferes with an employee's claimed contract right against the employer." The court did not, however, address Mulcahey's contention that, for liability to attach to a corporate officer, the tortious interference must have occurred outside the scope of the officer's employment. The court went on to

---

2. Mulcahey's proffered language on his affirmative defense of justification was:

If you find that Howard Mulcahey intentionally and improperly interfered with plaintiff's business relations, you must decide whether there was an acceptable purpose behind Mr. Mulcahey's interference.... Interference with business relations is not improper if it results from

find that "plaintiff amply proved that defendant Mulcahey willfully, intentionally and purposefully misrepresented facts to the President [of Bombardier]."

The district court also found that Chandler was entitled to prejudgment interest on the losses sustained by plaintiff, calculated at the federal statutory rate from the date of his dismissal until the date of judgment. This appeal followed.

### Discussion

### I. The Jury Instruction

■ Mulcahey contends the jury was not correctly instructed on tortious interference with contractual relations. He contends that the jury should have been instructed that a corporate officer can be held liable for tortious interference with a plaintiff's contractual relations with the defendant's employer only if he acted outside the scope of his employment and with malice.

Mulcahey, however, neither requested the charge he now claims should have been given, nor objected to the instruction that was given. What is more, the court charged the jury in accordance with the instructions Mulcahey requested.[2] Rule 51 of the Federal Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

■ Mulcahey asks us to rule that the instruction, as given, constituted *fundamental* error, and was therefore reversible notwithstanding the lack of objection. This contention is without merit, for the court's instruction on the defense of justification was consistent with Vermont law. In *Trepanier v. Getting Organized, Inc.,* 155 Vt. 259, 583 A.2d 583 (1990), the Supreme Court of Ver-

---

"honest advice." Advice is honest if it is made in good faith.

Consistent with this request, the court's instruction provided that Mulcahey should be exonerated if the jury found that "his interference was in the nature of *truthful information or honest advice, given in good faith.*" (emphasis supplied).

mont held that a defendant, who was a fiduciary for the entity terminating the contract with the plaintiff, can escape liability if he satisfies his burden of proving that "there [was] an acceptable purpose behind the interference." *Id.*, 583 A.2d at 589. The defendant can meet this burden by demonstrating that his interference consisted of honest advice, given in good faith, or that he was not motivated solely by a desire to further his personal interests. *Id.*

Contrary to Mulcahey's contention, the justification privilege under Vermont law turns not on the scope of employment, but on the motivation behind the actions. Thus, Judge Oakes properly directed the jury's attention to the inquiry of whether Mulcahey acted in good faith, and not whether he acted in the scope of his employment as an officer of Bombardier. And the jury apparently found under this instruction that Mulcahey's advice that led to Chandler's termination was not honestly given in good faith.

## II. *Evidence of Tortious Interference*

■ Mulcahey further contends that he was entitled to judgment as a matter of law because the evidence showed that his interference was justified. As stated above, our inquiry is governed by the standard enunciated in *Trepanier*, not by the scope of employment standard offered by Mulcahey for the first time on appeal. The evidence supported the jury's conclusion that Mulcahey did not give advice honestly in good faith, but rather acted in bad faith to further his personal interests. *See Trepanier*, 583 A.2d at 589.

The evidence showed that Mulcahey provided false information about Chandler to Bombardier's president. Mulcahey told Gingras that Chandler was aware of the problem at Family Boating for several weeks but failed to report it to senior management, and that he attempted to hide the problem. Yet the evidence at trial showed that Chandler reported the SOT promptly to both the Bombardier controller and Mulcahey, the Vice–President of Sales and Marketing. Mulcahey furthermore told the president that Chandler admitted fault. The evidence showed no such admission.

The jury's verdict was amply supported by the evidence. Mulcahey failed to meet his burden of demonstrating that his misstatements constituted honest advice given in good faith, or served any corporate purpose. On the contrary, the jury could reasonably have inferred that Mulcahey intervened solely to serve his personal interests, as Mulcahey took charge of the credit department upon Chandler's dismissal.

## III. *Prejudgment Interest*

■ Mulcahey also appeals the district court's assessment of prejudgment interest on the backpay award, which was calculated from the date of dismissal to the date of the judgment. Mulcahey does not dispute that prejudgment interest is a proper element of damages in an action for tortious interference with contractual relations. He contends, however, that the jury's verdict already included a calculation of prejudgment interest, as Chandler's expert "took into account the fact that Plaintiff did not have use of the money...." Therefore, he argues, the district court's award constituted double recovery. We disagree.

The purpose of a prejudgment interest award in a wrongful termination case is to compensate a plaintiff for the loss of use of money that the plaintiff otherwise would have earned had he not been unjustly discharged. *See Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 281–82 (2d Cir.1987) (awarding prejudgment interest in ADEA suit). In addition, "[p]rejudgment interest discourages an employer from attempting to 'enjoy an interest-free loan for as long as [it can] delay paying out back wages.'" *Clarke v. Frank*, 960 F.2d 1146, 1153–54 (2d Cir.1992) (upholding grant of prejudgment interest in Title VII claim) (quoting *Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55, 58 (2d Cir.1984)).

Chandler's economist did not include compensation for Chandler's inability to use the money in giving his analysis to the jury. Rather, the economist adjusted the dollars Chandler would have earned in past years to compensate for their diminished purchasing power resulting from inflation. Thus, the

adjustment was intended to give Chandler dollars carrying the same purchasing power today that he would have received at the time his salary accrued. That does not compensate for loss of use of the money in the intervening time.

Even if Chandler's economist did incorporate interest into his backpay calculation, it would be impossible to determine whether the jury relied on this calculation when it rendered its award. The special verdict did not require the jury to itemize the damages assessed against Mulcahey, and Mulcahey never requested such a breakdown. The jury simply awarded a lump sum of $161,277. Furthermore, there is nothing in Judge Oakes' instruction to the jury on damages that would have suggested to the jury that it award Chandler the equivalent of pre-judgment interest.[3] Accordingly, there is no basis for Mulcahey's argument that the award of prejudgment interest constituted a double recovery.

 Mulcahey argues also that the district court awarded excessive amounts of prejudgment interest. Where prejudgment interest is given, it should be assessed upon damages only as they become due. The district court below, however, awarded prejudgment interest as of the date of discharge on the entire amount of the backpay award, rather than calculating the interest separately for each lost salary payment. We agree with the defendant that interest should have run from the date of the missed payments, rather than from the date of termination. However, the district court applied the federal statutory rate of 3.58%, calculated pursuant to 28 U.S.C. § 1961, as opposed to the much higher Vermont statutory rate of 12%. See 9 V.S.A. § 41a(a) (1993). By using the much lower rate for the longer period, the district court appears to have achieved a fair figure for the interest, avoiding the need for numerous calculations establishing a separate

interest figure for each lost monthly payment. We find this came within the district court's discretion.

We have considered Mulcahey's other contentions and find that they lack merit.

*Conclusion*

The judgment of the district court is affirmed.

----

3. The relevant portion of the instruction provides:

> The general measure of back pay is the salary and the value of any benefits paid by Bombardier on his behalf that he would have received or been entitled to but for the wrongful discharge, but subtracting salary or other benefits actually received from other sources.

....

[I]f you determine that Mr. Mulcahey's interference wrongfully caused Bombardier to terminate Mr. Chandler, you may award him damages incurred as a result of the termination in the same manner as I described above for Plaintiff's wrongful discharge claim.