**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

| | | |
|---|---|---|
| In re Rivers Dev. Con. Use Appeal | } | Docket No. 7-1-05 Vtec |

**********************************************************************

| | | |
|---|---|---|
| In re Rivers Dev. Act 250 Appeal | } | Docket No. 68-3-07 Vtec |

**********************************************************************

| | | |
|---|---|---|
| In re Rivers Dev. ANR UIC JO | } | Docket No. 183-8-07 Vtec |

**********************************************************************

| | | |
|---|---|---|
| In re Rivers Dev. Indirect Discharge JO | } | Docket No. 248-11-07 Vtec |

**********************************************************************

| | | |
|---|---|---|
| In re Rivers Dev. Direct Discharge Permit Appeal | } | Docket No. 157-7-08 Vtec |

## Decision on Multiple Motions

These appeals arise out of decisions involving the efforts of Rivers Development, LLC ("Rivers") to gain the necessary approvals to construct a rock extraction and processing quarry ("Quarry") in the Town of Moretown. Docket Number 7-1-05 Vtec concerns the DRB's denial of Rivers' zoning and conditional use applications. Docket Number 68-3-07 Vtec concerns the denial by the District #5 Environmental Commission of Rivers' Act 250 land use permit application. Docket Number 183-8-07 Vtec concerns the opinion issued by the Vermont Agency of Natural Resources ("the Agency") that Rivers' Quarry does not require an underground injection control ("UIC") permit. Docket Number 248-11-07 Vtec concerns the jurisdictional opinion issued by the Agency that Rivers' Quarry requires an indirect discharge permit. Docket Number 157-7-08 Vtec, which has not previously been consolidated with the remaining dockets, concerns the decision by the Agency, denying Rivers' application for a direct discharge permit. The consolidated appeals have already been through one phase of trial and are scheduled for another phase of trial beginning on December 8, 2008.

1

Appellant-Applicant Rivers is represented by James Caffry, Esq., and Christopher J. Nordle, Esq.; Cross-Appellant "Neighbors"[1] are represented by David L. Grayck, Esq., and Zachary K. Griefen, Esq.; Cross-Appellants Town of Moretown (through its Selectboard), the Moretown Planning Commission, and the Moretown School Board (collectively, "Moretown") are represented by Ronald A. Shems, Esq., and Geoffrey H. Hand, Esq.; and the Vermont Agency of Natural Resources is represented by Aaron Adler, Esq.

This Decision addresses three of the motions that are currently pending before this Court.[2] First, Moretown has filed a motion to request that the Court reconsider its July 1, 2008 Entry Order on Moretown's motion for an immediate judgment on the pleadings, and Rivers has responded in opposition. Second, Rivers has filed a motion to consolidate Docket Number 157-7-08 with the other four cases that have already been consolidated, and the Agency and Moretown have responded in opposition. Third, the Agency has filed a motion to dismiss Docket Number 183-8-07 (the UIC permit appeal filed by Neighbors) and Docket Number 248-11-07 (the indirect discharge permit appeal filed by Rivers). Neighbors and Moretown responded in support of dismissal of both cases, while Rivers responded in opposition to dismissing their indirect discharge permit appeal.

## Factual Background

Most of the factual background for this case has already been described in this Court's two previous Decisions dated January 8, 2008, and January 11, 2008 (with corrected decisions for both filed on January 18, 2008), as well as the Entry Order of July 1, 2008, from which we incorporate undisputed material facts by this reference. To those descriptions, we need only add the following facts, all of which we understand to be undisputed, unless noted otherwise, and which we note for the sole purpose of putting the motion to consolidate and the motion to dismiss into context:

---

[1] "Neighbors" includes the following individuals, all of whom have appeared as a party in one or more of the consolidated appeals pursuant to V.R.E.C.P. 5(d)(2): Thomas Allen, Robert Dansker, Jack Byrne, Virginia Farley, Doug Hall, Cindy Hall, June Holden Life Estate, Rick Hungerford, Rita Larocca, Robert McMullin, Beverly McMullin, John Porter, Scott Sainsbury, Patricia Sainsbury, Sandy Porter, Benjamin Sanders, Denis Sanders, Karen Sharpwolf, Ruth Van Heuven, Martin Van Heuven, and Constance Van Heuven.

This Court's July 3, 2007 Decision denied certain requests for additional party status, but did not disturb these Neighbors' pre-existing party status. Although not all of the Neighbors have made appearances in each consolidated case, we use the term "Neighbors" here to represent whichever subset of Neighbors have appeared in each appeal. We also use the term Neighbors to include Arthur Hendrickson and Linda Hendrickson, who are allied with the Neighbors, even though they are representing themselves.

[2] The Court addressed other pending motions in two separate Entry Orders dated November 18, 2008. Any motions that are still pending will be addressed at the upcoming in-person hearing at 1:00 p.m. on November 24, 2008.

1.	On April 15, 2004, Rivers submitted a proposed discharge plan for the proposed project (including plans dated April 12, 2004) and requested that the Agency determine that a direct discharge permit is not needed.  At this point, Rivers apparently did not want to have to obtain a direct discharge permit for the Quarry.

2.	On April 19, 2004, Randy Bean sent a letter on behalf of the Agency to Rivers noting that the Agency had determined that a direct discharge permit was not needed for the proposed project.[3]

3.	On September 20, 2004, Rivers submitted revisions to its proposed discharge plan and asked the Agency to review these revisions.  The Agency then conducted a site visit two days later, on September 22, 2004.

4.	On September 27, 2004, Randy Bean sent a letter on behalf of the Agency to Rivers noting again that the Agency had determined that a direct discharge permit was not needed for the proposed project, even as revised.[4]

5.	On December 13, 2004, the Agency Commissioner noted that he had "determined that Randy Bean's letter, dated September 27, 2004, that indicated that no direct discharge permit is needed for the proposed quarry project in Moretown[,] is correct and therefore constitutes the final decision of the Agency."

6.	No one appealed the decision that was noted in the September 27, 2004 letter and in the December 13, 2004 letter.

7.	Rivers apparently later used the determination noted in the September 27, 2004 and the December 13, 2004 letters when Rivers made representations to the District Commission to show that no direct discharge permit was needed for the Quarry.

8.	During the roughly three years between December 13, 2004 (when the Agency Commissioner confirmed that no direct discharge permit was needed) and December 28, 2007 (when Rivers filed an application for a direct discharge permit), Rivers made additional modifications to the proposed discharge design for its proposed project.  The parties disagree about the extent of those modifications and when those modifications were properly brought to the attention of the Agency.  Rivers presented some of these modifications in its application for a UIC permit, which was received by the Agency on May 9, 2006, and which contained plans that

---

[3] Although the April 19, 2004 letter, as well as the September 27, 2004 letter, refers only to a "discharge permit," it is clear from the context that both of these letters were referring to direct discharge permits, as the Agency Commissioner noted in his December 13, 2004 letter.

[4] See footnote 3 above.

were dated May 5, 2006. The Agency disputes whether all of these modifications were clearly brought to the Agency's attention in the proper format. In reviewing the May 9, 2006 application, the Agency determined on August 7, 2007, that the proposal did not require a UIC permit,[5] and (based upon the same proposal) the Agency then determined on October 15, 2007, that the project does requires an indirect discharge permit.[6] After these determinations were made, Rivers made additional modifications, although again the parties dispute how extensive those modifications were. The most recent modifications appear to have been driven in part by Rivers' efforts to avoid impacting wetland areas. Thus, for instance, Rivers removed the level spreader that was represented in the earlier design, since that would have involved placing riprap in wetland areas. The parties agree that the current discharge design involves a rise pipe outlet instead of a level spreader, although Rivers seems to argue that the two are functionally equivalent.

9. On December 28, 2007, Rivers submitted an application to the Agency for a direct discharge permit for a modified discharge design for the Quarry.

10. On March 3, 2008, Rivers amended its application for a direct discharge permit.

11. From April 20, 2008, through May 20, 2008, the Agency held the requisite 30-day public notice and comment period on Rivers' application.

12. On July 14, 2008, the Agency denied Rivers' application for a direct discharge permit. Rivers then filed a timely appeal of this denial with this Court (Docket Number 157-7-08 Vtec).

13. No party has made an additional representation on material facts relating to the legal issues addressed by Moretown's motion to reconsider.

<u>Discussion</u>

We address the three motions that are before this Court in the order of their filing.

**I.      Motion to Reconsider**

Although we have the discretion to reconsider an earlier decision, we analyze arguments for reconsideration under an extremely restrictive standard of review. A motion to reconsider allows the court to modify a decision in order to relieve a party from "the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." <u>Rubin v. Sterling Enters.</u>, 164 Vt. 582, 588 (1996). The decision to grant relief pursuant

---

[5] This decision was appealed by Neighbors in Docket Number 183-8-07 Vtec.
[6] This decision was appealed by Rivers in Docket Number 248-11-07 Vtec.

to a motion to reconsider is "committed to the [trial] court's sound discretion." <u>Id</u>. If amendment of the judgment serves no useful purpose, the motion will be denied. <u>In re S. Vill. Cmtys., LLC</u>, No. 74-4-05 Vtec, slip op. at 2 (Vt. Envtl. Ct. Sept. 14, 2006) (Durkin, J.) (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.0).

Granting relief in a motion to reconsider is "an extraordinary remedy that should be used sparingly." <u>In re Bouldin Camp – Noble Road</u>, No. 278-11-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Sept. 13, 2007) (Wright, J.). Disagreement between the moving parties and the court is not grounds for reconsideration. <u>In re Boutin PRD Amendment</u>, No. 93-4-06 Vtec, slip op. at 2 (Vt. Envtl. Ct. May 18, 2007) (Wright, J.). Motions to reconsider should not be used to repeat arguments that have been raised and rejected by the court in the earlier decision. <u>Id</u>. at 1. Nor should such a motion be used to present evidence that could have been presented before the initial decision was made. <u>Rubin</u>, 164 Vt. at 589; <u>In re S. Vill. Cmtys., LLC</u>, No. 74-4-05 Vtec, slip op. at 2 (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.0). Given this strict standard of review, motions to reconsider are usually denied. <u>In re S. Vill. Cmtys., LLC</u>, No. 74-4-05 Vtec, slip op. at 2 (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.0).

In addition to the tremendous hurdle facing any party moving for reconsideration, we note that our July 1, 2008 Entry Order was in response to Moretown's motion for judgment on the pleadings, filed after some, but not all of Applicant's case in chief had been presented in the first stage of a bifurcated trial. Moretown continues to assert that now that Applicant has completed his presentation concerning the project's conformance with the Town of Moretown Town Plan ("Town Plan"), Moretown is entitled to judgment before the close of evidence.

Moretown's motion to reconsider for the most part repeats the same argument that this Court rejected in its July 1, 2008 Order. This approach has not often been successful in convincing a trail court that it should both reconsider and reverse its prior determination. See <u>In re Boutin PRD Amendment</u>, No. 93-4-06 Vtec, slip op. at 1.

We note that Moretown is correct that this Court erred when we made a reference to "the other provisions of Policy #7." See July 1, 2008 Order at 3. The Court meant to refer in that passage to page 24 in Chapter 4 of the Town Plan. Nevertheless, this error does not affect the outcome of this Court's July 1, 2008 Order, since we, regrettably, mistakenly cited the wrong section of the Town Plan. To clarify, we note here that the Town Plan contains numerous other sections, more specific to quarry operations, that this Court would have to ignore to read Policy

#7 as the absolute bar that Moretown suggests. For instance, page 24 in Chapter 4 of the Town Plan states that "[g]enerally, slopes in excess of 25% should not be developed" (emphasis added). By using the word "generally" here, the Town Plan implies that there are at least some circumstances in which such development is acceptable. Thus, Moretown is simply incorrect in its assertion that the Town Plan is entirely consistent.

To the extent that both Chapter 4 and Policy #7 are consistent in discouraging development on steep slopes, this Court is aware that Rivers has assumed a tremendous burden of proof at trial. That said, this Court stands by its decision that the interpretation of the Town Plan in its entirety, including Policy #7, fails the requisite test[7] to be interpreted as an absolute bar to Rivers' proposed quarry. As a whole, the Moretown Town Plan cannot be read as an absolute bar to all manner of development and related activities on slopes in excess of 25%. In particular, and in apparent contradiction of Moretown's interpretation of Policy #7, Chapter 4 provides evidence that some manner of development on slopes in excess of 25% is acceptable in some circumstances (since they are only "[g]enerally" discouraged). Further, given that quarrying operations tend to take place on or result in steep slopes, an outright prohibition stands in marked contrast to the "Gravel Resources" section of Chapter 4, which notes that quarrying operations are "important[t]" and that "future extraction of these resources should be anticipated." Thus, as noted in the July 1, 2008 Entry Order, Policy #7 fails the requirement in Flynn that a provision be "sufficiently clear to guide the conduct of an average person, using common sense and understanding." In re John J. Flynn Estate & Keystone Dev. Corp., #4C0790-2-EB, Findings of Fact, Conclusions of Law, & Order, slip op. at 23 (Vt. Envtl. Bd. May 4, 2004).

For these reasons, although a citation error was made in our July 1, 2008 Entry Order (for which the Court, again, sincerely apologizes), we conclude that amendment of that Order is not warranted and serves no useful purpose. This Court has previously noted that when it would serve no purpose to amend a judgment, a motion for reconsideration should be denied. In re S. Vill. Cmtys., LLC, No. 74-4-05 Vtec, slip op. at 2 (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.0). We therefore **DENY** Moretown's motion to reconsider.

---

[7] See July 1, 2008 Entry Order at 2–3 for a discussion of the three part test established by the former Vermont Environmental Board for determining whether a specific, absolute policy is articulated by specific language in a town plan, per In re John J. Flynn Estate and Keystone Development Corp., #4C0790-2-EB, Findings of Fact, Conclusions of Law, and Order (Vt. Envtl. Bd. May 4, 2004).

## II. Motion to Consolidate

Rivers has filed a motion to consolidate its most recent appeal, Docket Number 157-7-08 Vtec, with the other four cases that have already been set for trail. Both Moretown and the Agency have responded in opposition. Docket Number 157-7-08 Vtec concerns the Agency's denial of Rivers' application for a direct discharge permit. Although Rivers had previously asserted that its proposed quarry operation, as designed in 2004, did not need a direct discharge permit, Rivers applied for such a permit on December 28, 2007, and amended its application on March 3, 2008. After the requisite 30-day public notice and comment period, the Agency denied Rivers' application on July 14, 2008. Rivers then filed a timely appeal of this denial with this Court.

Moretown and Neighbors' primary complaint with consolidating the direct discharge permit appeal with the other four appeals now awaiting trial is that it makes litigation more difficult by forcing Moretown and Neighbors to respond to what they see as a constantly changing project. The Agency makes a similar argument and raises concerns about whether it will have enough time to conduct proper discovery if the direct discharge permit appeal is consolidated and made part of the upcoming trial. We sympathize with Moretown, the Neighbors, and the Agency. Preparing for litigation is difficult enough; having to do so against a repeatedly changing proposal is even more difficult. There can be no doubt that it is much easier to set one's sights on a single proposal and focus litigation efforts on explaining why that proposal should be denied. Thus, Rivers has made things more difficult for Moretown, the Neighbors, and the Agency by revising its discharge design.

That said, when a development proposal is challenged, especially when it is challenged with as much vigor as Rivers' quarry plan has been challenged here, it is not surprising that the developer would modify his proposal to try to address expressed concerns. Indeed, the evolution of most major project proposals is routine and should even be encouraged on occasion. After all, if revising a proposal succeeds at addressing the concerns that others have with a project, litigation can become altogether unnecessary. Thus, we are not prepared to conclude that Rivers must be held to all aspects of a previous proposal just because any changes in that proposal make litigation more difficult for the opposing parties. We are also left to wonder what would be accomplished by limiting the upcoming trial to evaluating only the older discharge design and ignoring Rivers' most recent discharge permit application.

Given the "significant common issues of law or fact" between the direct discharge permit appeal and the appeals that are already set for trial, we find consolidation appropriate here. See V.R.E.C.P. 2(b). In particular, we find that consolidation "will promote expeditious and fair proceedings and avoid unnecessary costs or delay." See id. Indeed, the interrelationship of the direct discharge, indirect discharge, and general permit issues is evidenced by Moretown and Neighbors' argument that the District Commission relied on Rivers' earlier representations that it would not need a direct discharge permit. We would not want to preclude such arguments at trial. We therefore conclude that consolidation is appropriate here.

Now that we plan to evaluate the direct discharge permit appeal, we note that this Court also has jurisdiction to evaluate whether Rivers' current discharge design qualifies for an indirect discharge permit. The Vermont Supreme Court has noted that this Court has the authority to address whatever the decision-making body below "might have done with an application." In re Torres, 154 Vt. 233, 235 (1990). Here Rivers' direct discharge permit application provided the Agency with all of the information it needed to address whether a direct or an indirect discharge permit was needed for the current design. Indeed, when Rivers applied for a UIC permit, the Agency went beyond that request and proceeded to evaluate the application for whether it needed an indirect discharge permit. In its October 15, 2007 letter, the Agency restated its determination that a UIC permit was not needed, and then noted that "[a]ccordingly, [the Agency] has reviewed the Project as now proposed to determine whether or not it requires an indirect discharge permit." The Agency's use of the word "[a]ccordingly" implies that the Agency has the authority to evaluate whether a proposal needs another type of permit once the Agency makes a determination on the applied-for permit. Similarly, in the event that Rivers does not qualify for a direct discharge permit, we see it as within our jurisdiction to do what the Agency could have done in those circumstances and review whether the current discharge design is required to obtain and qualifies for an indirect discharge permit. See In re Torres, 154 Vt. at 235.

We also note that the Agency goes too far when it asks this Court to hold that Rivers is precluded from arguing that a direct discharge permit is needed for the Quarry. The Agency correctly notes that unappealed permit decisions may not be subjected to collateral attack in later proceedings. See, e.g., In re Taft Corner Assocs., Inc., 160 Vt. 583, 593 (1993). Nevertheless, as the Agency itself argues, Rivers' current design proposal is different from the proposal that gave rise to the 2004 Agency letters that determined that no permit was needed. Thus, no one is challenging the Agency's conclusion in the 2004 letters that the previous discharge design

8

proposal did not require a direct discharge permit. Rather, Rivers is arguing that the current design requires a direct discharge permit.

We also conclude that Rivers cannot be collaterally estopped from arguing that its current discharge design proposal requires a direct discharge permit. The doctrine of collateral estoppel (now referred to as issue preclusion) prevents re-litigation of an issue that was decided in an earlier case and was necessary to the disposition of that case. See, e.g., In re T.C., 2007 VT 115, ¶ 20 (citing Scott v. City of Newport, 2004 VT 64, ¶ 8, 177 Vt. 491 (2004)). The Agency argues that the September 27, 2004 and the December 13, 2004 letters—which evidence a determination that the previous discharge design did not need a direct discharge permit—now act to collaterally estop Rivers from arguing that its current discharge design needs a direct discharge permit. We disagree.

The doctrine of issue preclusion applies when all five of the following criteria are met:

(1) preclusion is asserted against one who was a party . . . in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same [in both actions]; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion . . . is fair.

Trepanier v. Getting Organized, Inc., 155 Vt. 259, 265 (1990). The absence of even one of these criteria means that issue preclusion does not apply. See id. (using the conjunctive "and" when listing the five criteria). Although a number of the criteria are at issue here, we need only discuss the requirement of "a full and fair opportunity to litigate in the earlier action." Id. The earlier proceeding did not give Rivers an opportunity to litigate on behalf of needing a direct discharge permit. As the Agency notes, in the previous proceeding Rivers advocated for not needing a direct discharge permit. At that time, Rivers apparently believed that to be true, at least as to its then-existing design. But as all parties now note, Rivers has since made modifications to its discharge design, many of which Rivers made in response to concerns expressed about its previous design. Given that the earlier determination was based upon a different discharge design, Rivers has never had an opportunity to litigate the need for a direct discharge permit for its current design. We therefore conclude that application of the collateral estoppel doctrine is inappropriate here. See Trepanier, 155 Vt. at 265.[8]

---

[8] Although the Agency also makes a res judicata argument, we note that this argument fails for the same reason. Further, because issue preclusion does not apply, neither does res judicata (now referred to as claim preclusion); if no issues are precluded, then the whole claim cannot be precluded. See, e.g., Berisha v. Hardy, 144 Vt. 136, 138 (1984) ("[C]ollateral estoppel is a more limited concept than res judicata.").

9

The Agency raises an intriguing point about the general unfairness of allowing Rivers to argue that it needs a direct discharge permit when just four years ago, Rivers took the exact opposite position. In effect, the Agency argues that because Rivers itself advocated for the 2004 determination that no direct discharge permit is needed, Rivers must now live with the consequence of advocating for that determination.

Although we conclude that collateral estoppel does not preclude Rivers from advocating for a discharge permit, we are compelled to address the issue of equitable estoppel. The Vermont Supreme Court has noted that the test for equitable estoppel is "whether in all the circumstances of the case, conscience and duty of honest dealings should deny one the right to repudiate the consequences of his representations or conduct." Dutch Hill Inn v. Patten, 131 Vt. 187, 193 (1973). Four elements are required to show that equitable estoppel applies: "'(1) (t)he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.'" Town of Bennington v. Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288, 293–94 (1981) (citing Rosenthal v. Nat'l Life Ins. Co., 486 F. Supp. 1018, 1023 (S.D.N.Y. 1980)). As these elements reveal, the doctrine of equitable estoppel is meant to "encourage[e] fair dealing, good faith and justice" and is most frequently invoked in contract settings. Greenmoss Builders, Inc. v. King, 155 Vt. 1, 6 (1990).

We conclude that the equitable estoppel doctrine does not apply here. We have been presented with no foundation to conclude that Rivers acted in bad faith when it advocated for not needing a direct discharge permit in 2004 and subsequently changing its design plans and its legal strategy. Rather, it was only after changing its design and gleaning new information from additional studies that Rivers changed course and decided that a direct discharge permit was appropriate for its revised project design. Thus, Rivers did not know of all of the facts in 2004, and therefore at least one of the elements of equitable estoppel has not been met. See Town of Bennington, 139 Vt. at 293 (requiring that "(t)he party to be estopped must know the facts" at the time that the earlier representation is made). We therefore hold that Rivers is not equitably estopped from now arguing that it needs a direct discharge permit.

For all of these reasons, we **GRANT** Rivers' motion to consolidate Docket Number 157-7-08 with the other four cases that have already been consolidated. That said, we understand the concerns raised by Moretown, Neighbors, and the Agency about having to respond to a changing

10

discharge design, and we appreciate the Agency's suggestion that all water permit issues should be addressed separately at trial. We are not prepared to schedule a third phase of hearings, as the Agency suggests, but we are inclined to save all of the water permit issues for the end of the two-week trial that is currently scheduled to begin on December 8, 2008. We ask the parties to be prepared to discuss this scheduling issue at the upcoming in-person hearing at 1:00 p.m. on November 24, 2008.

### III. Motion to Dismiss

Citing V.R.C.P. 12(b)(1), the Agency has filed a motion (supported by Neighbors and Moretown) to dismiss Docket Number 183-8-07 (the UIC permit appeal filed by the Neighbors) and Docket Number 248-11-07 (the indirect discharge permit appeal filed by Rivers). Rivers responded in opposition to dismissing their indirect discharge permit appeal.

We note as an initial matter that no party has opposed the Agency's motion to dismiss Docket Number 183-8-07 (the UIC permit appeal). Indeed, even Neighbors—the very people who filed that appeal— support dismissal. Although Neighbors filed the UIC permit appeal in the good-faith belief that a UIC permit was needed, it appears as if the evidence that has been revealed more recently points toward the need for Rivers to obtain a different permit (either an indirect discharge permit or a direct discharge permit). Thus, apparently no party currently believes that a UIC permit is needed. For these reasons, we **GRANT** the Agency's motion to dismiss Docket Number 183-8-07 (the UIC permit appeal), and this case is hereby **DISMISSED**.

The Agency's motion to dismiss Docket Number 248-11-07 (the indirect discharge permit appeal) requires more careful analysis. The Agency makes a forceful argument that because Rivers has stated its intentions to go forward with a modified discharge design (the design proposed in Rivers' application for a direct discharge permit), and because Rivers therefore no longer intends to pursue an indirect discharge permit for its earlier design, this appeal no longer presents a live case or controversy. We agree. The Vermont Supreme Court has noted on numerous occasions that "a case generally becomes moot when there is no longer a live controversy, or the parties involved lack a 'legally cognizable interest in the outcome of the case.'" State v. Rooney, 2008 VT 102, ¶ 9 (mem.) (citing In re S.N., 2007 VT 47, ¶ 5, 181 Vt. 641 (mem.)). Given that Rivers no longer proposes to seek an indirect discharge permit for its earlier design, Rivers no longer has a legally cognizable interest in its request that this Court overturn the Agency's decision that such a design would require an indirect discharge permit. Further, this case does not fall under the "narrow exception" to the mootness doctrine "for cases

11

that are 'capable of repetition yet evading review.'" Id. at ¶ 11 (citing In re Vt. State Employees' Ass'n, 2005 VT 135, ¶ 12, 179 Vt. 578 (mem.)). We find that this case is moot because it asks this Court to pass judgment on a project that Rivers does not actually intend to pursue. This scenario appears to present a textbook definition of a request for an advisory opinion. Cf., e.g., In re Lawrence and Darlene McDonough, Decl. Ruling #306, Memo. of Decision & Dismissal Order (Vt. Envtl. Bd. Dec. 22, 1995).

Rivers' main argument against dismissing its indirect discharge permit appeal is that Rivers maintains that its current discharge design is similar enough to its previous discharge design as to give rise to a live controversy. Rivers seems to hinge this argument on its claim that the actual volume of discharge at the end of the proposed outlet pipe is the same, even if the discharge design has been altered. Even assuming that Rivers is correct, we disagree with the notion that a discharge design remains the same so long as it discharges the same volume of water at its end point. Numerous other factors about a design can alter the content and movement of the discharge. For instance, Rivers admits that its current design involves a rise pipe outlet rather than a level spreader (and Rivers argues that the two are functionally equivalent). Functional equivalency does not limit our review. Rather, Rivers must fulfill its burden of proving that its entire system design conforms to the applicable regulations. Given that the Agency based its previous indirect discharge permit jurisdictional opinion on the presence of a level spreader, this in itself makes that previous opinion moot, now that Rivers intends to use an alternative design.

Rivers argues that dismissing its appeal will finalize the Agency's determination that an indirect discharge permit is needed for the Quarry, and Rivers is concerned that this will prevent Rivers from obtaining the direct discharge permit it seeks. To the extent that Rivers expresses this concern, it seems to be fighting against itself. The Agency has already conceded—and in fact argued forcefully in multiple filings before this Court—that it views the current discharge design as an entirely different proposal from the design at issue in the indirect discharge permit appeal. Further, because the indirect discharge permit decision was only a jurisdictional opinion, it does not preclude Rivers from now arguing that its previous design is not actually feasible. Thus, we fail to see how the success of Rivers' current discharge design proposal is linked in any way to the Agency's prior ruling that a previous design would need an indirect discharge permit.

For these reasons, we **GRANT** the Agency's motion to dismiss Docket Number 248-11-07 (the indirect discharge permit appeal), and we therefore **DISMISS** that appeal, without

prejudice to Rivers' subsequent discharge designs. We also remind the parties that although we are dismissing the appeal of the Agency's jurisdictional opinion on whether an indirect discharge permit is needed for the previous discharge design, this does not preclude Rivers from arguing that its current discharge design permit qualifies for an indirect discharge permit. As noted earlier, that issue can be addressed as part of our review of whether Rivers' current discharge design qualifies for a direct discharge permit.

## Conclusion

For all of the reasons discussed above, while we have conducted some reconsideration of our July 1, 2008 Entry Order on Moretown's motion for judgment on the pleadings, we **DENY** Moretown's request to reverse that determination. We hereby **GRANT** Rivers' motion to consolidate Docket Number 157-7-08 Vtec with the other four appeals that have already been consolidated. We also **GRANT** the Agency's motion to dismiss Docket Number 183-8-07 Vtec (the UIC permit appeal) and Docket Number 248-11-07 Vtec (the indirect discharge permit appeal); those two appeals are hereby **DISMISSED**. Thus, Docket Number 7-1-05 Vtec (the conditional use appeal), Docket Number 68-3-07 Vtec (the Act 250 Appeal), and Docket Number 157-7-08 Vtec (the direct discharge permit appeal) will proceed to the next phase of the trial, which is scheduled to begin on December 8, 2008.

We look forward to the upcoming in-person conference at 1:00 p.m. on November 24, 2008. We hope to discuss at that conference how best to proceed at trial. In particular, we expect to discuss the idea of saving all of the water permit issues for the end of the upcoming trial, and we will also discuss any other issues that need to be addressed. We understand that all of the parties have limited resources, and that this proceeding has already consumed large amounts of resources for all of the parties involved. We appreciate the parties' efforts to bring this proceeding to a conclusion and hope to be able to facilitate this as best as we can, while also ensuring that all of the parties have a full and fair opportunity to make their presentations.

Done at Newfane, Vermont this 21st day of November 2008.

_____
Thomas S. Durkin, Environmental Judge

13