2007 VT 47

**In re S.N.**

[928 A.2d 510]

No. 06-306

¶ 1. May 25, 2007. The State appeals a Washington Family Court order determining that the State lacked probable cause that S.N. was a person in need of mental-health treatment. The State argues the court erred by: (1) applying the rules of evidence at the probable-cause hearing and (2) failing to consider post-admission evidence in its probable-cause determination. We dismiss the appeal as moot.

¶ 2. In May 2006, two police officers found S.N., a New York resident, at a highway rest stop in Vermont. S.N. appeared disoriented and was unable to carry on a normal conversation. He also displayed erratic behavior, such as washing his face in a parking-lot puddle and stuffing a large number of travel brochures into his shirt and pants. S.N. told the officers he had driven from New York City to Vermont and identified his vehicle in the parking lot. The officers contacted a friend of S.N. for help, and the ensuing conversation gave the officers cause to doubt S.N.'s driving abilities. Considering this discussion in conjunction with their observations of S.N.'s abnormal behavior, the officers suspected S.N. suffered from mental illness and decided he was unfit to drive. The officers asked S.N. to consent to a mental-health evaluation, and S.N. agreed.

¶ 3. S.N. received a mental-health screening from a qualified professional. During the screening, the mental-health professional observed S.N.'s disorganized speech and unpredictable behavior. He also learned from S.N. that he had been admitted to a psychiatric hospital in the past and was in Vermont to stop taking his medication for "a year of cleansing" because he believed the medicine was poison. In addition, the mental-health professional spoke with two of S.N.'s friends over the telephone and discovered that S.N. suffered from bipolar disorder and had stopped taking his medication before, which had resulted in car accidents. Based on S.N.'s behavior and his friends' statements, the mental-health professional determined that S.N. was a "person in need of treatment" and completed an emergency examination application with a psychiatrist. See 18 V.S.A. § 7101(17) (defining a person in need of treatment as one who suffers from mental illness such that he presents a danger to himself or others); *id.* § 7504(a) (outlining the application process for a person in need of treatment to receive an emergency examination). S.N. was then transported to the Vermont State Hospital (VSH) where he was ad-

mitted for an emergency psychiatric examination.

¶ 4. After admission, S.N. filed for a preliminary probable-cause hearing, which was held within the statutorily required period. See *id.* § 7510 (mandating that a petition for a preliminary hearing be filed within five days of admission for an emergency examination and that the hearing be held within three days of the date the petition was filed). At the hearing, the State presented evidence of the mental-health professional's discussions with S.N.'s friends and the VSH director's observations of S.N. while hospitalized. The family court concluded that the evidence was not enough to show probable cause to admit S.N. because the mental-health professional's testimony was hearsay and the director's interactions with S.N. occurred after he was in custody. The court also stated that evidence of S.N.'s mental illness and his act of driving a car while unmedicated was insufficient to support a finding of probable cause that S.N. was a danger to himself or others. The court ordered S.N. discharged and returned to his vehicle or home. S.N. returned to his home in New York, and the State filed this appeal.

¶ 5. We first address S.N.'s argument that the State's appeal is moot. Before we can reach the State's substantive issues, there must be either a "live" controversy, or the parties must have a "legally cognizable interest in the outcome" of the case throughout the entire proceeding. *In re P.S.*, 167 Vt. 63, 67, 702 A.2d 98, 100 (1997). When the State filed its appeal, S.N. had been released from VSH and was no longer in Vermont. Therefore, a ruling from this Court would not affect S.N.'s custodial status and is moot unless it falls under an exception to the mootness doctrine.

¶ 6. We have previously recognized an exception to the mootness doctrine for cases that are capable of repetition, yet likely to evade review. *P.S.*, 167 Vt. at 67-68, 702 A.2d at 101. The State contends that this is such a case, and that we should therefore consider the merits of its appeal despite the lack of a live controversy here. Alternatively, the State urges us to adopt a public-interest exception to the mootness doctrine, despite our historic reluctance to do so.

¶ 7. The narrow exception to the mootness doctrine for situations capable of repetition yet evading review applies where: (1) the challenged action ceases before it is fully litigated, and (2) there is a reasonable expectation that the individual will be subject to the same action again. *Id.* at 67-68, 702 A.2d at 101. Typically, then, the exception applies where the subject of an adverse action or order below seeks redress where it would otherwise be unavailable due to the short duration of the action or situation at issue. See, e.g., *P.S.*, 167 Vt. at 67-68, 702 A.2d at 101 (considering merits of case despite lack of live controversy where patient was likely to confront situation leading to revocation of her nonhospitalization order again); *State v. Condrick*, 144 Vt. 362, 363-64, 477 A.2d 632, 633 (1984) (considering case despite lack of live controversy where defendant's ninety-day commitment order was discharged but likely to recur). There is no indication that S.N. will return to Vermont such that these same parties will be involved in similar litigation in the future. S.N. is a resident of New York with no established history of travel or connection to Vermont. Even if S.N. returns to Vermont, however, there is no evidence he will arrive unmedicated and be a danger to himself or others. While the State claims that S.N. is likely to return to Vermont because he believes he can avoid medication and involuntary treatment in the state, this is merely hypothetical, and it is equally plausible that S.N.'s apprehension at the rest stop will

deter him from returning unmedicated for fear that he may be subject to similar mental health proceedings. See *In re Green Mountain Power Corp.*, 148 Vt. 333, 335, 532 A.2d 582, 584 (1987) (describing a reasonable expectation as more than a "theoretical possibility" of the situation's recurrence).

¶ 8. Nevertheless, the State asserts that the Court should hear its appeal simply because, by virtue of its position as a frequent prosecutor of involuntary treatment cases, it is bound to encounter the same evidentiary issues encountered at S.N.'s probable-cause hearing. Despite the State's inability to fully resolve the evidentiary issues attendant to preliminary hearings under 18 V.S.A. § 7510, our review of the court's evidentiary rulings at S.N.'s hearing would result in the quintessential advisory opinion, as a decision in favor of the State would have no bearing on S.N. whatsoever. Here, the State is not the subject of an adverse order affecting its legal rights, and therefore it cannot in earnest argue that it has a legally cognizable interest in *this* litigation merely because it will litigate preliminary hearings in the future. Cf. *In re PCB File No. 92.27*, 167 Vt. 379, 380-81, 708 A.2d 568, 569-70 (1998) (holding that exception applied where bar counsel was subject to adverse discovery order and another Professional Conduct Board hearing panel had directed a similar order to bar counsel in another matter). If we were to accept the State's argument, we would be applying the literal meaning of the words "capable of repetition, yet evading review" entirely outside of the context of the exception's purpose — to provide an avenue for legal redress where there is indeed a live controversy despite the short duration of the action or situation at issue. Thus, the fact that the State will in future be a party to preliminary hearings under § 7510, alone, is an insufficient basis upon which to review a moot case.

¶ 9. Alternatively, the State argues that we should review the trial court's order because it is in the public interest to do so. In jurisdictions recognizing a public-interest exception to the mootness doctrine, the issues presented to the court generally must be substantial, pressing, and likely to recur to qualify for the exception. See, e.g., *Hendrick-Koroll v. Bagley*, 816 N.E.2d 849, 851 (Ill. App. Ct. 2004) (stating that "moot issues may be reviewed under [the] public interest exception when there is a substantial public or private question involved, an authoritative determination is required for future guidance, and the issue is likely to recur"); *Proctor v. Butler*, 380 A.2d 673, 675 (N.H. 1977) (finding pressing issue of public interest where courts were applying inconsistent standards of proof for the same curtailment of personal liberty through involuntary commitment), *overruled on other grounds by In re Sanborn*, 545 A.2d 726 (N.H. 1988). The State argues that this case meets those criteria, as the issue of the evidentiary requirements at preliminary hearings under § 7510 is both of substantial public importance and likely to recur. Specifically, the State asserts that application of the rules of evidence will force it to prove the need for treatment at probable-cause hearings, and if it fails to do so, individuals who should otherwise receive treatment will be released despite the State's ability to gather sufficient evidence by the date of final hearing. While this may indeed be an important issue, we nonetheless decline to adopt the public-interest exception, as the exception would almost certainly swallow the rule. We can hardly imagine a state action that is not of substantial public significance and would not, therefore, qualify for this exception. More importantly, however, the State's request

is not within our constitutional authority. The Vermont Constitution confers judicial authority only to "to determine actual controversies arising between adverse litigants," and issuing an advisory opinion, even based on public-interest considerations, would exceed our constitutional mandate. *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (citations omitted). Thus, we once again reject a catch-all public-interest exception to the mootness doctrine. See *In re M.A.C.*, 134 Vt. 522, 523, 365 A.2d 254, 255 (1976) (per curiam) (declining to adopt the public-interest exception); *In re Moriarty*, 156 Vt. 160, 164, 588 A.2d 1063, 1065 (1991) (same).

¶ 10. Without a live controversy or applicable exception to the mootness doctrine, we decline to address the State's substantive arguments.

*Dismissed.*