**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| In re: Jackson Subdivision ROW Access | } | Docket No. 195-9-07 Vtec |
| | } | |

**Decision on Pending Motions**

Appellants Lynn and Terry Brown ("the Browns") appeal a decision of the Town of Bristol Zoning Board of Adjustment ("ZBA"), approving Cross-Appellant Andrew Jackson's application for approval of an expanded right-of-way to be used to access a subdivision[1] on 10 High Street in Bristol. Mr. Jackson cross-appeals and seeks determination of the extent of authority that §§ 502 and 620 of the Town of Bristol Zoning Bylaws and Regulations ("Zoning Bylaws") confer upon the ZBA and the Town of Bristol Selectboard ("Selectboard"). The Browns are represented by Debra L. Bouffard, Esq. Mr. Jackson is an attorney and represents himself. The Town of Bristol ("Town") is represented by William E. Flender, Esq.

There are several pending motions and cross-motions now ripe for consideration. Mr. Jackson, the Browns, and the Town have each filed competing motions for summary judgment. In addition, Mr. Jackson has twice moved to dismiss the Browns' appeal. Mr. Jackson has also moved for the Town's motion for summary judgment and supporting memorandum to be struck or otherwise go unconsidered, asserting that the motion was untimely filed. We will consider each of these motions in turn.

**Factual Background**

For the purposes of the pending motions only, we consider the following facts undisputed unless otherwise noted.

1.      Mr. Jackson owns the parcel of land in the Town of Bristol located at 10 High Street. At the time of his purchase of this parcel on August 24, 2007, the lot was essentially land-locked, with a thin strip of land, about twenty to twenty-five feet in width, providing access and road frontage at the junction of High Street and Mountain Terrace for a pre-existing home on the parcel.

---

[1] The actual subdivision of Mr. Jackson's property is not the subject of this appeal. The Town has not chosen to adopt subdivision regulations and instead, to a limited extent, regulates land subdivision through its zoning permit approval process.

2.      At the time that Mr. Jackson contracted to purchase this parcel, he desired to subdivide it into two lots.  Since the existing Zoning Bylaws required that lots with insufficient road frontage must have access to a town road by way of a right of way at least thirty-five feet in width, Mr. Jackson obtained an expansion of this right-of-way from the owner of the servient real estate, Ms. Gayle C. Weiss, such that the width of the right-of-way would be expanded to thirty-five feet.  The Agreement between Mr. Jackson and Ms. Weiss, with an attached site map, was submitted as Jackson Exhibit G.

3.      The parties either dispute the size of Mr. Jackson's lot, or its size is uncertain.[2]  The lot stretches across the High Density Residential, Low Density Residential, and Conservation Districts, but there appears to be some confusion regarding where the division lines between the zoning districts fall within the lot.  See Jackson Exhibit B (Planning Commission members noting uncertainty regarding zoning district lines).  Mr. Jackson's lot contains one existing house.

4.      The Browns reside at 54 Mountain Terrace and are southerly neighbors of Mr. Jackson.[3]

5.      On July 10, 2007, Mr. Jackson submitted a zoning permit application for a two-lot subdivision to the Town of Bristol Zoning Administrator ("Zoning Administrator").  The exact size and dimensions of the existing lot and the two proposed new lots have not been provided in our record.

6.      The Zoning Administrator denied Mr. Jackson's application on the day it was submitted, reasoning that the application would require two referrals:  first, to the Planning Commission for an interpretation of the zoning district boundaries under Zoning Bylaws § 510 and second, to the ZBA for approval of the right-of-way to serve the land-locked parcels under Zoning Bylaws § 502. The Zoning Administrator's determinations are written out on the bottom of the first page of Mr. Jackson's zoning permit application, a copy of which has been provided as Town Exhibit 1.

7.      The Planning Commission held a public hearing on July 31, 2007.  Town Exhibit 3. Based upon the application, exhibits, and testimony presented at that hearing, the Planning

---

[2] For example, Mr. Jackson contends that the lot is 4.8 acres, the Town asserts the lot is 3.1 acres, and the Town of Bristol Planning Commission found that the lot was 4.2 acres.  Jackson's Factual Response to the Town at ¶ 3, Town's Statement of Facts at ¶ 3; and see Jackson Exhibit C (containing a copy of the Planning Commission decision dated August 21, 2007).

[3] Mr. Jackson has at least two southerly neighbors, the Appellants and the Bulls. The Bulls have not appeared in this appeal.

Commission approved Mr. Jackson's interpretation of the zoning district boundaries map, prepared by Miles Weston. We have not been made aware of any appeal being taken from this Planning Commission determination.

8. The ZBA held a hearing on Mr. Jackson's right-of-way approval application on August 14, 2007. Id. Four members of the ZBA were present at this hearing. The ZBA reviewed the application under Zoning Bylaws § 502, titled "REQUIRED FRONTAGE ON, OR ACCESS TO, PUBLIC ROADS."

9. Mr. Jackson presented the ZBA with a site plan, showing his proposed two-lot subdivision and the expanded right-of-way he secured from Ms. Weiss. A copy of this site plan was submitted to the Court as Jackson Exhibit A.

10. Mr. Jackson's first lot, which would contain his existing house, would be easterly of and adjacent to Ms. Weiss's lot. Jackson Exhibit A. This lot would lie in both the High Density Residential and Low Density Residential Zoning Districts.

11. The second lot would be easterly of the first lot and much larger than the first lot. The second lot would lie in the Low Density Residential and Conservation Districts.

12. The expanded easement encumbering Ms. Weiss's property would serve as a common driveway used to access both of the proposed lots. Jackson Exhibit G. The easement agreement speaks to work to be done within the easement. However, neither this agreement nor any of Mr. Jackson's application materials make clear the extent to which Mr. Jackson intends to expand the actual driveway within the right-of-way or conduct other work on any portion of the to-be-shared driveway, including where it intersects with the town highway. Id.

13. The ZBA approved Mr. Jackson's application for approval of his right-of-way and gave notice of its decision by letter dated August 16, 2007, a copy of which has been submitted as Jackson Exhibit F ("ZBA Decision").

14. In response to the Browns' expressed concerns regarding water run-off being increased by Mr. Jackson's proposed development, the ZBA found that a pile of debris "was created in 1988 in connection with the existing house on [Mr. Jackson's property]." Jackson Exhibit E at 2 (containing a copy of the August 14, 2007 ZBA meeting minutes). The ZBA found that no water damage related to the debris pile had been claimed or observed until a high-rainfall event in 2004. Id. Finally, the ZBA found Mr. Jackson's proposed development would not, "in and of

itself" increase water runoff to southerly adjoining properties, "provided the permit is so conditioned." Id.

15. The ZBA placed conditions on their approval. First, the ZBA required "that the Fire Chief approves Section 620(11)." Second, it required that "the Road Foreman approves Section 620 (1-6 & 11)." Last, it required that the right-of-way "shall not increase the existing water drainage to the adjoining southerly properties."

16. The Browns thereafter filed a timely appeal of the ZBA Decision. Mr. Jackson filed a timely cross-appeal. We are not aware of any other municipal determination that has been preserved for our review in this appeal.

17. After the ZBA approved Mr. Jackson's application, Mr. Brown wrote to a Selectboard member, requesting advice and a review of his concerns, including the Browns' assertion that the Selectboard has certain review responsibilities over Mr. Jackson's proposed two-lot driveway access onto a town road. In his letter, Mr. Brown specifically quoted portions of Zoning Bylaws § 620. See Jackson Exhibit H (Mr. Brown's Aug. 23, 2007 letter to Mrs. Carol Wells, a Selectboard member).

18. Mr. Brown attended the Selectboard's next regularly scheduled meeting[4] on August 27, 2007 and was allowed to speak to the concerns he expressed in his August 23rd letter. The meeting minutes reflect that Selectboard members, Mr. Brown, and Mr. Jackson discussed Mr. Brown's several concerns about water run-off from the Jackson parcel to his parcel. The minutes also reflect that there was some discussion about what responsibilities the Selectboard may have to review Mr. Jackson's proposed public highway access, pursuant to Zoning Bylaws § 620, but the minutes do not contain any reference to a determination announced by the Selectboard under § 620.

19. Mr. Brown followed his August 27th visit with the Selectboard with a letter to William Bryant, the Bristol Town Administrator.[5] Mr. Brown's letter is dated September 6, 2007; a copy has been supplied to the Court as Jackson Exhibit J.

20. Mr. Bryant responded to Mr. Brown by letter dated September 14, 2007. Jackson Exhibit K. Given that this letter followed the Selectboard's discussion with Mr. Brown, it seems implicit

---

[4] See the minutes of the Selectboard's August 27, 2007 meeting, which have been filed as Jackson Exhibit I. We have not been provided with any evidence that Mr. Brown's requests under Zoning Bylaws § 620 were noticed for this meeting or a specific agenda item for this meeting.

[5] Mr. Bryant also serves as the Town Zoning Administrator.

that Mr. Bryant was writing to Mr. Brown at the direction of or under the authority of the Selectboard, although he nowhere makes such a representation. The Bryant letter also does not disclose a specific Selectboard determination, nor does it contain any notice that a person aggrieved by any Selectboard determination may appeal such determination, either to this Court or some other court vested with appellate review of Selectboard determinations.

21. In his letter, Mr. Bryant addressed some aspects of the proposed improvements to the Jackson driveway "we have discussed"[6] and why they may not be regulated under Zoning Bylaws § 620. Mr. Bryant also addressed the ZBA approval condition regarding an increase of water drainage onto Mr. Brown's property and how it may (or won't) be measured. Mr. Bryant did not address any specific determination by the Selectboard regarding either applicability or compliance with Zoning Bylaws §620.

## Mr. Jackson's Motions to Dismiss

Mr. Jackson has twice moved to dismiss Appellants' appeal, or at least strike some of the legal challenges raised in their Statement of Questions. See V.R.E.C.P. 5(f) (subjecting Statements of Questions to motions to dismiss or strike). Mr. Jackson asserts two bases for this motion. First, he argues that there is no authority for the ZBA or the Selectboard to regulate drainage issues that may arise in conjunction with his development plans, an argument that resembles a motion to dismiss for failure to state a claim upon which relief can be granted. V.R.C.P. 12(b)(6); see also V.R.E.C.P. 5(a)(2) (incorporating the Rules of Civil Procedure, as applicable, to Environmental Court appeals). Second, Mr. Jackson argues that the issue of whether his application requires Selectboard approval is not properly before the Court. Mr. Jackson asserts that the Browns may not raise in this proceeding the issue of Selectboard access approval under Zoning Bylaws § 620. We will examine the second basis for dismissal first.

As in any appeal to this Court, our first responsibility is to be mindful of the limitations of our authority to decide legal questions presented by parties. We are guided by the general constraints placed upon all courts to only decide cases and controversies that are squarely presented and to not render advisory opinions. In re Appeal of 232511 Invs., Ltd., 2006 VT 27, ¶ 19, 179 Vt. 409, 417. This caution is, in part, a practical one, since deciding a case not

---

[6] See Jackson Exhibit K at p. 1. It is not clear from Mr. Bryant's letter whether this reference is to discussions he had with Mr. Brown, Mr. Brown's discussions with the Selectboard, or both.

squarely before it causes a court to rely upon an undeveloped record. Id. at ¶ 18. This caution is also rooted in the constitutional limitation that courts may only render decisions within their jurisdictional authority. Id. at ¶ 19. We intend to respect these limitations.

The Environmental Court also faces specific limitations when reviewing a municipal determination under appeal. While we are required to review most municipal appeals on a de novo basis, our authority is not so broad as to hear the entire application anew. Rather, we are directed to limit our proceedings to only that aspect of the pending application that has been preserved for our review by an appellant's statement of questions. V.R.E.C.P. 5(f). Simendinger v. City of Barre, 171 Vt. 648, 651 (2001), In re Torres, 154 Vt. 233, 235-36 (1990). We intend to respect this further limitation as well.

With these limitations in mind, we note that a Selectboard determination pursuant to Zoning Bylaws § 620 has not been appealed to this Court and is not the subject of these proceedings. This may very well be because no such determination has been made by the Selectboard, at least as shown in the record presented to us. Nor are we aware of any announcement by the Selectboard of a specific decision that § 620 does not require their review of Mr. Jackson's expanded right-of-way or proposed dual access for homes on each of his proposed lots. We are aware that Mr. Bryant's most recent reply letter to the Browns (Jackson Exhibit K) provided Mr. Bryant's assessment of the § 620 procedures and why Selectboard approval of Mr. Jackson's proposal may not be warranted. But it is unclear and uncertain from the record before us that Mr. Bryant was providing notice to the Browns of a specific Selectboard determination. In short, the record before us does not reveal that a Selectboard determination of the applicability of § 620 has been made.

In rendering our decision here, we do not decide whether a § 620 determination must contain a notice to parties that they may appeal that determination, whether there is a right to appeal, or whether any such appeal must be filed with this Court or the appropriate Superior Court under V.R.C.P. 75. Such questions are beyond our jurisdictional authority in this appeal. In light of our jurisdictional limits, we conclude that the portion of the Browns' Statement of Questions that asks this Court to determine whether the Selectboard ought to have approved Mr. Jackson's public highway access pursuant to Zoning Bylaws § 620 is not properly before us in this appeal. Accordingly, Questions 2, 4, and that part of Question 3 that relates to Selectboard approval are hereby **DISMISSED**.

Examination of Mr. Jackson's first basis for dismissal, that the ZBA does not have authority to consider drainage issues when approving this type of permit, requires that we analyze both the Zoning Bylaws and the pending application. Therefore, it is proper to consider this motion to dismiss as a motion for summary judgment. See V.R.C.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment"); and see Perini Road Quarry, Docket No. 264-12-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Aug. 28, 2006) (J. Durkin) (citing Lueders v. Lueders, 152 Vt. 171, 172 (1989)). Accordingly, Mr. Jackson's motion to dismiss on these grounds is hereby converted to a motion for summary judgment and considered with the parties' cross-motions for summary judgment.

### Mr. Jackson's Motion to Strike

Mr. Jackson has moved that the Town's Motion of Summary Judgment be struck and not considered, alleging that the motion was untimely filed. Our February 19, 2008 Entry Regarding Motion set March 5, 2008 as the deadline for the parties to file pretrial motions. The Town filed its Motion for Summary Judgment on March 5th. The motion was timely and in accord with our Order. Therefore, Cross-Appellant Jackson's Motion to Strike is **DENIED**.

### Summary Judgment Requests

Summary judgment is a determination that a trial is not necessary. We may only grant a summary judgment request if we determine that "the pleadings, depositions, answers to interrogatories . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3) (emphasis added); Openaire, Inc. v. L.K. Rossi Corp., 2007 VT 120, ¶ 7. When presented with cross-motions for summary judgment, we are directed to consider each motion in turn and to afford the party opposing the motion under consideration the benefit of all reasonable doubts and inferences. DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609, 611; Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990). However, before examining the issues presented on motion for summary judgment, we must examine our authority to decide those issues.

## A.       Scope of the Appeal

In this <u>de novo</u> appeal, the Browns' Question 1 asks us to reverse the ZBA Decision for lack of evidentiary support for its factual conclusions regarding water runoff.  Specifically, the Browns allege there was insufficient factual support in the exhibits and other evidence supplied to the ZBA for its conclusion that Mr. Jackson's proposal "will not in and of itself increase water runoff on to adjoining properties to the south" so long as Mr. Jackson adheres to the ZBA permit conditions.  The Browns also assert that there was insufficient legal and factual support for the ZBA approval of the application with conditions.  The Browns' Question 3 similarly asks whether we should reverse the ZBA findings of fact for failure to consider potential drainage problems and mitigation.  In addition, the Browns' Question 6 asks us to reverse the ZBA Decision because of an alleged conflict of interest.

Our role in a <u>de novo</u> appeal is to apply the standards that were applicable before the tribunal appealed from and to hear the appealed-from application anew, as though no prior action had been taken.   10 V.S.A. § 8504(h), V.R.E.C.P. 5(g); and see <u>In re: Gizmo Realty/VKR Assocs., LLC</u>, Docket No. 199-9-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Apr. 30, 2008) (J. Durkin) (explaining that a <u>de novo</u> hearing "contemplates an entire trial similar to the proceedings from which the appeal arose").   Because we will consider anew those aspects of Mr. Jackson's application that have been appealed, the question of whether the evidence presented to the ZBA was sufficient is not a claim we are charged with addressing.  We cannot "reverse" the ZBA factual findings on this basis.

Thus, the Browns' Questions 1 and 3 must be **DISMISSED** to the extent they ask us to review the propriety of the ZBA's factual conclusions, due to an insufficient record in the ZBA proceedings to support them.  To the extent that Questions 1 and 3 ask whether Mr. Jackson's application may be approved under the Zoning Bylaws access and driveway requirements, we turn our review now to the legal authority for the ZBA in the first instance, and this Court on appeal, to consider such questions under the applicable provisions of the Zoning Bylaws.

Before addressing those questions, we consider our authority to address the legal issues posed in the Browns' Question 6.  In that Question, the Browns alleged that the ZBA Decision must be reversed due to a conflict of interest one of the ZBA members suffered at the time the ZBA considered Mr. Jackson's application.  This allegation does not present us with a claim capable of being addressed or upon which relief can be granted in a <u>de novo</u> appeal.  See <u>In re</u>

<u>Cote NOV</u>, Docket No. 273-11-06 Vtec, slip op. at 3 (Vt. Envtl. Ct. Aug. 22, 2007) (J. Durkin) (explaining that in a <u>de</u> <u>novo</u> appeal, this Court is not charged with examining the propriety of a zoning authority's actions). Question 6 is therefore **DISMISSED**.

Similarly, Mr. Jackson's Statement of Questions must also be limited to the extent he asks us to address legal issues beyond our authority. Mr. Jackson has posed three questions that broadly ask whether the ZBA or Selectboard have authority under § 620 to "issue approval[s]," whether § 620 has any applicability to this project if this project proposes no construction or modification of an existing driveway intersection with a public right-of-way, and whether § 620 gives the ZBA or Selectboard authority to regulate drainage unrelated to the roadway intersection or stormwater drainage generally. We have already determined that the pending appeal does not preserve for our review any determination by the Selectboard under § 620. We therefore must again decline in this appeal to address legal questions relating to a § 620 determination.

To the extent that Mr. Jackson's Questions 1, 2 and 3 seek advice on general concerns regarding the applicability of § 620, we must decline the invitation to give an advisory opinion. That part of those Questions must therefore be **DISMISSED**. <u>In re S.N.</u>, 2007 VT 47, ¶ 9, 181 Vt. 641, 643-44 (mem.); <u>In re 232511 Invs., Ltd.</u>, 2006 VT 27, ¶ 19, 179 Vt. 409, 417. We will examine in this appeal whether and to what extent § 620 is applicable to the conditional approval issued by the ZBA.

Lastly, we note that the Browns' Question 5 asks if we should reverse the ZBA legal and factual findings regarding the enforceability of conditions the ZBA attached to Mr. Jackson's application. We note that no allegation of a zoning violation by Mr. Jackson is presently before us. To entertain the Brown's Question 5, we would need to assume future facts and a legal claim not presently before us, and thereby render an advisory opinion. We decline to do so. The Brown's Question 5 must also be **DISMISSED**.

## B.     Right-of-Way and Access Approval (Zoning Bylaws §§ 502 and 620, respectively)

The parties' remaining Questions[7] display a dispute over the proper interpretation and application of Zoning Bylaws §§ 502 and 620, as well as questions regarding the scope of authority § 620 confers upon the ZBA. When construing zoning bylaws, we apply the familiar

---

[7] See the Browns' Question 1 and Mr. Jackson's Questions 1, 2, and 3 as they relate to the applicability of § 620 to Mr. Jackson's application; the Browns' Question 3 as it relates to regulation by the ZBA of drainage issues under § 620, and the Browns' Question 5 as it relates to regulation and enforcement of permit conditions.

rules of statutory construction. In re Casella Waste Mgmt., 2003 VT 49, ¶ 6, 175 Vt. 335, 337. We first look to the plain meaning of the bylaws, and, if that resolves the conflict without doing violence to the zoning scheme, look no further. Id. If there is doubt about a provision's meaning, we will determine the provision's intent by considering the whole of the bylaw, its subject matter, and its effects and consequences. See Murdoch v. Town of Shelburne, 2007 VT 93, ¶ 5 (quoting Ran-Mar, Inc. v. Town of Berlin, 2006 VT 117, ¶ 5, 181 Vt. 26, 28-29). We will avoid a construction that renders any portion of the bylaws "ineffective or superfluous." Id.

As an initial matter, we note that the ZBA, as the appropriate municipal panel, had authority to review Mr. Jackson's application for right-of-way approval, as it was a "right-of-way or easement for land development without frontage," as authorized by 24 V.S.A. § 4412(3). 24 V.S.A. § 4460(e)(1). This authority is also present in Zoning Bylaws § 502, which by its plain language requires ZBA approval of easements for land-locked parcels.

Zoning Bylaws § 502 prohibits land development on lots that "do not have either frontage on a public road or, with the approval of [the ZBA], access to such a road by a permanent easement or right-of-way" of specific minimum width. It appears the parties do not dispute the ZBA's authority to consider Mr. Jackson's approval request under § 502. However, all parties make note of the § 502 reference to § 620 for "additional access requirements." Specifically, the parties differ on the specific legal question of what authority the Bylaws afford the ZBA in the first instance, and this Court on appeal, to impose conditions within the scope of Bylaws § 620.

We conclude that the plain language of § 502 includes an informational reference, but no more than that, to § 620. We first note that neither Bylaw provision grants specific authority to the ZBA to review compliance with the standards enumerated in § 620, such as safety and sight distances. Compare Zoning Bylaws §§ 502 and 620. Those standards are left to the specific province of the Selectboard, as the legislative body of the Town. See 19 V.S.A. § 1111(b); and see Zonings Bylaw § 620 (making reference to § 1111(b)). While § 1111(b) would allow for it, we have found no designation to the ZBA of the authority to approve access onto public roads; that authority solely rests with the Selectboard, pursuant to Zoning Bylaws § 620. See also In re: Appeal of O'Rear, et al., Docket No. 2-1-00 Vtec, slip op. at 5 (Vt. Envtl. Ct. Apr. 24, 2001) (J. Wright) (explaining the application of 19 V.S.A. § 1111).

Section 620 also provides that "any activity for which a zoning permit is required and which involves the construction *or modification* of a driveway intersection with a public right of

way shall require, as part of the zoning permit, approval of such construction or modification *from the Selectboard*." (Emphasis supplied). The purpose of this second sentence in § 620 is to give the Selectboard additional approval authority where public rights-of-way may be affected by driveway construction or modification. In the absence of specific authority, we cannot allow the reference to § 620 and conditions based thereon to be part of any ZBA approval of Mr. Jackson's right-of-way application, since the Bylaws contain no such delegation to the ZBA, nor notice that the ZBA may impose § 620 conditions. Sections 502 and 620 regulate different impacts, albeit two that often occur on one right-of-way: § 502 vests in the ZBA the determination of whether a landlocked parcel is served by a permanent easement of at least thirty-five feet in width; § 620 vests in the Selectboard the authority to review and impose conditions upon a private intersection with a public highway.

We know of no successful challenge to the general authority of Vermont municipalities to regulate land uses within their borders. However, municipal land use regulation has limits, including those founded upon a notion of procedural integrity, including fair notice of what requires regulation and upon what standards an application will be judged. In re John A. Russell Corp., 2003 VT 93, ¶ 28, 176 Vt. 520, 526 (mem.). The discretion to approve or deny land use applications must be accompanied by specific standards to be followed in exercising that discretion, so as to provide adequate notice of how such applications will be reviewed and evaluated. In re Handy, 171 Vt. 336, 344 (2000) (citing Town of Westford v. Kilburn, 131 Vt. 120, 124 (1973)). Further, it is improper for the municipal panel charged with exercising its quasi-judicial authority to delegate that authority to another body. Simendinger v. City of Barre, 171 Vt. 648, 653 (1999) (mem.) (citing Kilburn, 131 Vt. at 126).

We therefore conclude that the reference in Zoning Bylaw § 502 to the public highway access approval standards in § 620 is a mere informational reference for those seeking or opposing approval of a right-of-way highway access. Section 502 contains no such standards for the ZBA to use in its review of Mr. Jackson's request that the ZBA approve the right-of-way for his land-locked lots. In light of the precedent of Russell, Kilburn and Simendinger, we cannot see how the ZBA in the first instance, or this Court on appeal, can impose § 620 conditions upon its approval of a right-of-way used in lieu of road frontage, when § 502 announces no standards and the Selectboard's authority and obligation to review highway accesses under § 620 has not been properly delegated to the ZBA.

Section 502 governs approval of something very distinct and separate from the highway accesses regulated by § 620. In its entirety, § 502 provides the ZBA with the following direction and authority:

> No land development may be permitted on lots which do not have either frontage on a public road or, with the approval of the [ZBA], access to such a road by a permanent easement or right-of-way at least 35 feet in width for permitted by-right uses and 50 feet in width for conditional uses. Also see Section 620 for additional access requirements.

By its very language, § 502 restricts the development of lots not having adequate road frontage, such as Mr. Jackson's, to only those that the ZBA determines (1) are for a permitted use; (2) benefitting from a permanent easement or right-of-way; (3) that is at least 35 feet in width. Section 502 charges the ZBA with making these determinations, but does not authorize the ZBA to impose further standards or conditions outside of those enumerated in § 502.

We recognize, as the Town has indicated, that the ZBA has authority to "attach additional reasonable conditions and safeguards as it deems necessary" to implement the purposes of the bylaws, of the municipal plan, and of Chapter 117 of Title 24. 24 V.S.A. § 4464(b)(2). But if the Kilburn precedent is to have any meaning, then conditions imposed by the ZBA must have some relation to or foundation in the standards the ZBA is authorized to apply to the proposed development. Because we find no foundation within § 502, or elsewhere in the Bylaws, for the ZBA to impose water drainage and other § 620 conditions on its approval of Mr. Jackson's right-of-way, we must remove those conditions from the ZBA § 502 approval and cannot repeat them in any approval issued by this Court. Our determination here in no way is intended to limit what conditions may be approved, or whether any approval is needed, in any future § 620 review by the Selectboard.

For these reasons, we cannot mimic the conditions imposed by the ZBA in any approval of Mr. Jackson's right-of-way. There being no other foundation for rejecting Mr. Jackson's § 502 approval request and in light of the undisputed evidence of compliance of his right-of-way with the § 502 provisions, we conclude that he is entitled to approval as a matter of law. See Kelly v. Town of Barnard, 155 Vt. 296, 299 (1990) (where facts that the applicable law deems relevant are uncontested, "summary judgment, if appropriate, shall be entered") (quoting V.R.C.P. 56(e)).

## Conclusion

Accordingly, for these reasons, it is **ORDERED** and **ADJUDGED** that Cross-Appellant Jackson's Motion to Strike is **DENIED**. We hereby **DISMISS** Appellant's Questions 1 through 6, inclusive, and Cross-Appellant Jackson's Questions 1 through 3, inclusive, to the extent that they refer to § 620 and the conditions based thereon, as they seek review of issues not properly preserved for our review in this appeal.

As no genuine issues of material fact remain for our consideration in the pending appeal, summary judgment is hereby entered so as to issue a § 502 approval of Cross-Appellant Jackson's right-of-way access for his proposed two-lot subdivision off of High Street and Mountain Terrace. This completes the proceedings that the Court may conduct in this appeal. A Judgment Order accompanies this Decision.

Done at Berlin, Vermont this 8th day of July, 2008.

_____
Thomas S. Durkin, Environmental Judge

- 13 -