2013 VT 73

**Ross "Rocky" Anderson, Benjamin Eastwood, Daniel Albert and Nicole Killoran v. State of Vermont, Secretary of State James Condos**

[82 A.3d 577]

No. 12-272

Present: **Reiber, C.J., Skoglund, Burgess and Robinson, JJ., and Eaton, Supr. J., Specially Assigned**

Opinion Filed September 6, 2013

*Charles L. Merriman,* and *Emily Flewelling* and *Alexandrea Castino,* Law Clerks (On the Brief) of *Tarrant, Gillies, Merriman & Richardson,* Montpelier, for Plaintiffs-Appellees.

*William H. Sorrell,* Attorney General, and *Keith Aten* and *Bridget Asay,* Assistant Attorneys General, Montpelier, for Defendants-Appellants.

¶ 1. **Robinson, J.** This case requires us to consider whether Vermont's nominating petition process for independent candidates for President of the United States, as interpreted and applied by the Secretary of State, unduly burdens the rights of such candidates and their supporters under the First and Fourteenth Amendments of the U.S. Constitution. We conclude that the trial court correctly held that it does and affirm the trial court's judgment for plaintiffs.

¶ 2. Independent candidates for President of the United States can get on the general election ballot in Vermont by submitting to the Secretary of State, by a specified date, a statement of nomination accompanied by the signatures of at least 1000 qualified voters. 17 V.S.A. § 2402(a), (b)(1)(A). The statement of nomination must include "certification by the town clerk of each town where the signers appear to be voters that the persons whose names appear as signers of the statement are registered voters in the town." *Id.* § 2402(a)(4). In the certification, the town clerk confirms that each named signer is in fact a registered voter in that town and certifies the total number of names on the statement belonging to registered voters in that town.

¶ 3. The largely uncontested facts as found by the trial court are as follows. Plaintiff Ross "Rocky" Anderson was an indepen-

dent candidate for President of the United States in the 2012 election. In May 2012, a group of volunteers under the direction of plaintiff Benjamin Eastwood, Mr. Anderson's campaign coordinator, set about gathering the requisite 1000 signatures to qualify Mr. Anderson for the general election ballot. They got signatures from 1400 people from at least twenty-two towns and cities. However, supporters were delayed and ultimately frustrated in their nomination efforts by the Secretary of State's interpretation of 17 V.S.A. § 2402, pursuant to which town clerks could certify only names appearing on original nominating petitions, rather than on faxes or photocopies.[1] Plaintiff Eastwood and others were only able to get town clerk certification for 580 signatures before the June 14 deadline.

¶ 4. Plaintiff Anderson and three supporters sought injunctive relief, challenging the constitutionality of the town-clerk-certification requirement that was applicable to independent candidates for President but not to major-party candidates. The State moved to dismiss the complaint. Following a hearing, the trial court concluded that overall, the statute appeared to be a reasonable regulation of elections. Nonetheless, the trial court denied the State's motion to dismiss and granted plaintiffs permanent injunctive relief on the ground that the Secretary of State's requirement that town clerks certify only names listed on original statements — as opposed to faxes or photocopies of those statements — unduly burdened plaintiffs' First and Fourteenth Amendment rights. The court granted plaintiffs extended time to file certified statements of nomination with the Secretary of State, instructed town clerks to accept legible photocopies or facsimiles for the purpose of certification, and directed town clerks to complete certification within two business days of submission.

¶ 5. Significantly, the trial court's decision rested on the relatively narrow question of the constitutionality of the Secretary of State's requirement that town clerks certify only original statements. The trial court rejected plaintiffs' broader argument that the certification requirement was invalid on its face. Accordingly, the trial court denied plaintiffs' request that the court eliminate the certification requirement altogether.

---

[1] The requirement that town clerks certify names only on original nominating petitions is not expressly set forth in the statute, 17 V.S.A. § 2402(a)(4), and does not appear to be reflected in any duly adopted rules.

¶ 6.  ■  The State appealed, arguing that the "original state-
ment" requirement serves important state interests and imposes
only a minor burden on plaintiffs' rights.[2] Plaintiffs urge us to
affirm the trial court's ruling that the Secretary of State's appli-
cation of 17 V.S.A. § 2402(a)(4), pursuant to which the Secretary of
State requires that town clerks certify only original statements,
violates plaintiffs' rights.[3]

¶ 7. On appeal, we review the trial court's conclusions of law de
novo. *Badgley v. Walton*, 2010 VT 68, ¶ 4, 188 Vt. 367, 10 A.3d 469.
We do not disturb the trial court's findings of fact unless they are
clearly erroneous. *Id.* In this case, plaintiffs do not dispute the
facts.

¶ 8.  ■  During elections, states must balance the constitutional
rights of voters " 'to associate for the advancement of political
beliefs, and . . . cast their votes effectively' " against the necessary
objective of maintaining fair and honest elections that eschew
chaos. *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (quoting
*Williams v. Rhodes*, 393 U.S. 23, 30 (1968)). As a practical matter,
states must develop regulations, potentially even substantial or
complex regulations, in order to achieve this balance. *Id.* While
these regulations invariably will burden, at least to some degree,
voters' fundamental rights to associate and cast votes effectively,

---

[2] Although the November 2012 election is long behind us, the State argues that the
issue presented is not moot because it is capable of repetition but evades review.
See *In re S.N.*, 2007 VT 47, ¶ 7, 181 Vt. 641, 928 A.2d 510 (mem.) (describing
requirements for this narrow exception to the mootness doctrine). Plaintiffs have
not briefed the issue either way. We agree with the State. See *Norman v. Reed*,
502 U.S. 279, 288 (1992) ("There would be every reason to expect the same parties
to generate a similar, future controversy subject to identical time constraints if we
should fail to resolve the constitutional issues that arose in 1990."); *Green v.
Mortham*, 989 F. Supp. 1451, 1453 (M.D. Fla. 1998) ("[I]t is a well-settled principle
that given the brief duration of the election season ballot access cases are capable
of repetition yet susceptible to evading review.").

[3] Plaintiffs also reiterate their arguments that the certification requirement, which
applies solely to independent candidates and does not apply to major party
candidates, is unconstitutional wholly apart from the original statement require-
ment applied by the Secretary of State. They urge us to strike down the
certification requirement for independent candidates altogether, rather than limit-
ing our ruling to the requirement that town clerks certify only original statements.
Plaintiffs did not, however, cross-appeal the trial court's ruling, and we thus decline
to rule on plaintiffs' request that we reverse the trial court's order upholding the
constitutionality of the certification requirement generally.

not all restrictions "impose constitutionally suspect burdens." *Id.* at 788.

¶ 9. [3, 4] This Court recently considered the constitutionality of a different state election statute that imposed burdens on candidates for public office, upholding the constitutionality of an accelerated filing deadline for general election ballot access that affected only independent candidates. *Trudell v. State*, 2013 VT 18, 193 Vt. 515, 71 A.3d 1235. There, we applied the balancing test articulated by the U.S. Supreme Court in *Anderson*, 460 U.S. at 789:

> A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Trudell*, 2013 VT 18, ¶ 8 (citations omitted). We explained that "when a state imposes a severe restriction on access to the ballot, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* ¶ 8 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). On the other hand, "when a state election law provision imposes 'reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions.'" *Id.* (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

¶ 10. ■ Although our review of reasonable, nondiscriminatory restrictions is more deferential, the U.S. Constitution nonetheless requires a meaningful review of the state interests underlying the restrictions as well as the nexus between the articulated interests and the restrictions at issue. Our opinion in *Trudell* demonstrates that deferential review is not shorthand for "rubber stamp." We recognized there that the State "need not provide empirical evidence justifying its interest," but we also made it clear that the State "cannot rely on hollow or contrived arguments as justifications." 2013 VT 18, ¶ 21.

¶ 11. Applying the balancing test to the filing deadline at issue in *Trudell*, we determined that the accelerated timeline was a reasonable, nondiscriminatory regulation that, at most, placed a minor burden on independent candidates. *Id.* ¶ 19. We went on to explain that "[e]ven a minor burden requires an evaluation of the State's proffered justifications for the advanced deadline." *Id.* ¶ 20. Even though we considered the statute to be neutral and reasonable, and the associated burden to be minor, we nevertheless rejected two of the three supporting rationales proffered by the State because the State's articulated interests were not sufficiently connected to the challenged restrictions. *Id.* ¶¶ 22, 23.

¶ 12. With this guidance in mind, we first consider the burden that 17 V.S.A. § 2402(a)(4), as applied, imposes on plaintiffs' First Amendment rights. The focus of our assessment is not the burden of the certification requirement as a whole but, rather, the added burden arising from the requirement that town clerks certify only names appearing on original statements. As a result of the Secretary of State imposing this requirement in administering the statute, if a campaign collects signatures from individuals residing in multiple different Vermont towns on the same page of a nominating statement, the campaign must then submit that original page to each respective town clerk, successively. Plaintiff Eastwood testified that driving from one town to another, throughout the state, to get multiple clerk certifications on a particular nominating statement page takes many hours. The burden is compounded by the fact that clerks in different towns keep different schedules, and there is no requirement that clerks certify and return the statements within a particular time frame. Although a campaign can minimize the burden by including only signers from one town on a given page, this constraint is difficult to enforce.

¶ 13. ■ ■ We conclude that the burden associated with this requirement is not severe. As noted above, a well-organized campaign can minimize the burden by collecting signatures from residents of different towns on different pages, or by starting the signature-gathering process earlier. If the Rocky Anderson campaign had planned better, it could have started its signature-collection efforts sooner, getting the requisite signatures and securing the necessary certifications in time. However, the burden is not, as the State suggests, trivial. In order to segregate nominating statement pages by town, a canvasser at, say, the

Burlington Discover Jazz Festival, where plaintiff Albert signed a nominating statement, would have to be armed with literally dozens of different pages, and would have to identify a voter's town of residence and produce the corresponding form to the voter within the very short window of time typically available in such encounters. This back-and-forth has to be more time-consuming, and, thus, more burdensome, than simply handing a clipboard to a passerby, without a preliminary exchange regarding the person's residence. Moreover, there is a limit to how early a small, independent campaign can reasonably be expected to start gathering signatures. The U.S. Supreme Court has recognized the burden on an independent candidate's signature-gathering efforts resulting from deadlines that require the signature-gathering too far in advance of the election. *Anderson*, 460 U.S. at 792 ("When the primary campaigns are far in the future and the election itself is even more remote, the obstacles facing an independent candidate's organizing efforts are compounded."). Given these factors, we characterize the burden on plaintiffs' First and Fourteenth Amendment rights as minor, but not trivial.

¶ 14. ▪ The State proffers two primary interests in support of the requirement of original petitions for certification: deterring fraud and promoting orderly elections. We do not dispute the importance of these goals. As in *Trudell*, however, we must look more closely to determine whether the requirement at issue actually serves those state interests. See 2013 VT 18, ¶¶ 22-23. As the trial court aptly noted, the Legislature arguably could have required that voters' signatures be submitted to the town clerks not simply for certification that the names belong to registered voters, but for authentication that the named registered voters actually signed them. But that is not what the Legislature did. The certification requirement merely calls upon town clerks to certify that "the persons whose names appear as signers of the statement are registered voters in the town." 17 V.S.A. § 2402(a)(4). Nothing about the certification requirement calls upon town clerks to authenticate the signatures on the nominating petitions. Given that the town clerks' role is limited to matching names against the voter checklist, the requirement for original statements does not in any way enhance their effectiveness.

¶ 15. On appeal, the State counters that the original-statement requirement helps assure the authenticity of the nominating petitions themselves, rather than individual signatures. The State

posits the following scenario: If photocopies or facsimiles of statements of nomination could be sent to the town clerk, an unscrupulous candidate could obtain voter signatures on a statement for another candidate, or on a sign-up sheet for a community event, and then could paste in a copy of the list of names on a statement of nomination for their preferred candidate. A quick review of the record suggests that this reason falls on the "contrived argument" side of the line. *Trudell*, 2013 VT 18, ¶ 21. Under the existing system, using the forms provided by the Secretary of State, when multiple town clerks certify names on the same statement, many simply append a page to the statement listing the number of registered voters from their respective towns. These separate pages often simply certify that a given number of signers of "this petition" are registered voters in the given town, without referring to the candidate listed on the nominating statement. Given how easy it would be under the existing system for an unscrupulous campaign to swap out such certifications on nominating statements, or to rely on forged signatures for that matter, we cannot assign significant weight to the State's asserted interest in averting the specific and narrow type of fraudulent conduct it describes.

¶ 16. The State's second rationale focuses on administrative convenience. With the original-statement requirement, the Secretary of State need only review one copy of each statement, rather than multiple copies of each document, each with different signatures certified by different town clerks. The State's argument is reasonable, and allowing town clerks to certify copies could increase the complexity of the Secretary of State's review. But the Secretary of State could readily mitigate the complexity of allowing town clerks to certify photocopies by, for example, requiring campaigns to attach all copies of a particular page of a nominating statement together when submitting them. Although the administrative burdens of allowing town clerks to certify names appearing on photocopies are real, they are not so substantial or insurmountable as to outweigh the burden on plaintiffs' First and Fourteenth Amendment rights.

¶ 17. We note two other factors that distinguish this case from *Trudell* and play some role, albeit minor, in our constitutional analysis. In *Trudell*, we noted two significant distinctions between the uniform filing deadline at issue in that case and the Ohio restrictions struck down by the U.S. Supreme Court in *Anderson*.

First, the early filing deadline in *Anderson* did not apply uniformly to all candidates, and accordingly put independent candidates at a disadvantage. *Trudell*, 2013 VT 18, ¶ 9. By contrast, the statute at issue in *Trudell* applied uniformly to all candidates, whether or not party-affiliated. Second, the Ohio statute at issue in *Anderson* regulated presidential elections, as opposed to state or local elections, thus implicating "a uniquely important national interest" and suggesting a commensurately weaker state regulatory interest. *Trudell*, 2013 VT 18, ¶ 10. The candidacy at issue in *Trudell* was for Congress. Neither of these distinctions applies in this case. The restriction at issue applies only to independent candidates and therefore imposes a burden on independent candidates that does not apply to major party candidates,[4] and the present case arose from plaintiff Anderson's presidential run. The first factor adds a modest increment of weight to the "burden" side of the scale, and the second diminishes the weight of the State's interest.

¶ 18. For the above reasons, we agree with the trial court that the Secretary of State's requirement that town clerks certify only original statements when performing their function pursuant to 17 V.S.A. § 2402(a)(4) unconstitutionally burdens plaintiffs' constitutional rights. We thus affirm the trial court's judgment and permanent injunction for plaintiffs.

*Affirmed.*

---

[4] We do not address the question of whether this differential burden is warranted in light of the distinct circumstances of independent and major-party-affiliated candidates. See *supra*, ¶ 6 n.3.